# THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| v. | :   3:16-CR-255 |
| | :   (JUDGE MARIANI) |
| CHAY WRIGHT, | : |
|           Defendant. | : |

## MEMORANDUM OPINION

### I. INTRODUCTION AND PROCEDURAL HISTORY

On September 6, 2016, a federal grand jury indicted Defendant Chay Wright on one count of possession with intent to distribute heroin, "bk-MDEA (ethylone), a derivative of 2-aminopropan-1-one", cocaine, and cocaine base ("crack") in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B). (Doc. 1).

On August 24, 2020, Defendant filed a Motion to Suppress Seizure of Defendant (Doc. 76), Motion to Suppress Search of Residence (Doc. 78), and Motion to Dismiss Indictment for Vagueness (Doc. 82). The Court thereafter scheduled an evidentiary hearing and oral argument for November 17, 2020 which was continued at the parties' request to November 25, 2020 (Docs. 91, 93, 94). At the hearing, the parties presented witness testimony relating to both of Defendant's motions to suppress. Neither party offered witness testimony or oral argument on Defendant's motion to dismiss the indictment. (*See e.g.*, Hr'g Tr., at 123)(counsel for Defendant acknowledging that "the original order [scheduling the hearing] mentioned the motion to dismiss on vagueness, but I don't see any reason to

provide additional argument. I think that was covered adequately in the brief by defendant."). At the close of the hearing, the parties requested the opportunity to file post-hearing briefs and they have now done so (see Docs. 99, 100).

On January 19, 2021, the Court scheduled this matter for trial to commence on March 22, 2021. (Doc. 101). On January 21, 2021, the Court issued a memorandum opinion (Doc. 102) and Order (Doc. 103) denying the Motion to Suppress Seizure of Defendant and denying in part and granting in part Defendant's Motion to Suppress Search of Residence (Doc. 78).

The Court thus addresses in this Memorandum Opinion Defendant's remaining motion, the Motion to Dismiss Indictment for Vagueness (Doc. 82). For the reasons set forth herein, the Court will deny the Motion.

## II. ANALYSIS

Defendant asserts in the present motion that "[d]ue to vagueness in the law as applied to ethylone, Mr. Wright had no notice in October 2015 that possession of ethylone would be unlawful" and thus the "prosecution for possession of ethylone in this case violates Mr. Wright's Due Process Rights under the 5th Amendment". (Doc. 82, at ¶¶ 6-7). Defendant thus moves for the indictment to be dismissed with prejudice "on the grounds that 21 U.S.C. § 841 is unconstitutionally vague as applied to ethylone." (Doc. 83, at 2). In sum, Defendant argues that: "The schedule of controlled substances did not include ethylone in 2016. The DEA definition for positional isomer did not apply to temporarily listed

substances. And a person of ordinary intelligence could not have known that possessing ethylone with intent to distribute would have been unlawful in 2016. The indictment is defective and must be dismissed." (*Id.* at 8).

Preliminarily, although Wright moves to have the entire indictment dismissed, his motion is limited to a void-for-vagueness challenge as to the bk-MDEA (ethylone). Because Wright is also charged with possession with intent to distribute heroin, cocaine, and cocaine base, as noted by the Government, "the instant motion to dismiss would at best, eliminate bk-MDEA from the indictment" (Doc. 87, at 3 n. 1; *see also, id.* at 12-13).

A void-for-vagueness argument implicates a defendant's due process and Fifth Amendment rights. As explained by the Supreme Court:

> The Fifth Amendment provides that "[n]o person shall ... be deprived of life, liberty, or property, without due process of law." Our cases establish that the Government violates this guarantee by taking away someone's life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement. The prohibition of vagueness in criminal statutes is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law, and a statute that flouts it violates the first essential of due process.

*Johnson v. United States*, 576 U.S. 591, 595 (2015) (internal citations and quotation marks omitted). In other words,

> As generally stated, the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement. Although the doctrine focuses both on actual notice to citizens and arbitrary enforcement, we have recognized recently that the more important aspect of vagueness doctrine is

3

> not actual notice, but the other principal element of the doctrine – the requirement that a legislature establish minimal guidelines to govern law enforcement. Where the legislature fails to provide such minimal guidelines, a criminal statute may permit a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections.

*Kolender v. Lawson*, 461 U.S. 352, 357-358 (1983) (internal citations and quotation marks omitted). Thus, "[t]o satisfy due process, 'a penal statute [must] define the criminal offense [1] with sufficient definiteness that ordinary people can understand what conduct is prohibited and [2] in a manner that does not encourage arbitrary and discriminatory enforcement.'" *Skilling v. United States*, 561 U.S. 358, 402-403 (2010)(quoting *Kolender*, 461 U.S. at 357). However, even where a statute or regulation is ambiguous, "a scienter requirement in a statute 'alleviate[s] vagueness concerns,' 'narrow[s] the scope of the [its] prohibition[,] and limit[s] prosecutorial discretion.'" *McFadden v. United States*, 576 U.S. 186, 197 (2015) (quoting *Gonzales v. Carhart*, 550 U.S. 124, 149, 150 (2007)). In evaluating a vagueness challenge, a Court should attempt to "construe, not condemn" Congress' enactments." *Skilling*, 561 U.S. 403.

Here, Defendant's brief in support of his motion to dismiss relies almost exclusively on the Eleventh Circuit's decision in *United States v. Phifer*, 909 F.3d 372 (11th Cir. 2018). (*See* Doc. 83, at 3-5, 6-7).

In *Phifer*:

> [Defendant] Phifer was indicted for, on May 20, 2015, possessing with intent to distribute "a substance and mixture containing a detectable amount of a positional isomer of [b]utylone, also known as [e]thylone ...." He pled not guilty and went to trial.

4

> At trial, Phifer did not dispute that he possessed ethylone. Rather, his entire defense rested on the contention that, at the time of his arrest, ethylone was not a controlled substance under the CSA because it was not a "positional isomer" of butylone as the term "positional isomer" is used in 21 C.F.R. § 1308.11(h). Specifically, Phifer contended that the DEA's definition of "positional isomer" as set forth at 21 C.F.R. § 1300.01(b) does not govern the meaning of the term "positional isomer" in § 1308.11(h) – which identifies only temporarily scheduled substances – because, by its language, the DEA's definition applies to only those substances listed at § 1308.11(d) – which are permanently scheduled hallucinogens. And since, in Phifer's view, the DEA supplied no definition for the term "positional isomer" as it appears in § 1308.11(h) (temporarily scheduled drugs), Phifer argued at trial that the "literal definition" of "positional isomer" applied to that term. According to Phifer, the "literal definition" of the term is the "scientific ... meaning that is known commonly in the science world, what is taught to the chemists." And, Phifer contended, under the common science definition of "positional isomer," ethylone is not a positional isomer of butylone.

909 F.3d at 379.[1]

In support of his position, Phifer presented an expert witness in organic chemistry. The expert testified that under one definition of "positional isomer" (the "McMurry" definition), "positional isomers have the same carbon skeleton" and "butylone and ethylone are not positional isomers because they do not have the same carbon skeletons", but rather are "skeletal isomers" (defined as "isomers with different carbon skeletons"). *Phifer*, 909 F.3d at 380-381. As explained by the Eleventh Circuit: "Whether isomers are positional or

---

[1] 21 C.F.R. § 1308.11 sets forth the list of Schedule I drugs under the Controlled Substances Act. Subsections (b) through (g) of the regulation identify the substances permanently placed on Schedule I while subsection (h) identifies substances temporarily listed on the Schedule. In the present case, as in *Phifer*, it is undisputed that at the relevant time, "butylone, along with its 'optical, positional, and geometric isomers, salts, and salts of isomers,' appeared at 21 C.F.R. § 1308.11(h)", *Phifer*, 909 F.3d at 376, and was thus not yet permanently placed on Schedule I.

5

skeletal under the McMurry and DEA definitions differs because the DEA definition of 'positional isomer' does not require two different substances to have the same carbon skeleton; in essence, it allows at least some skeletal isomers (under the McMurry definition) to count as positional isomers." *Phifer*, 909 F.3d at 381.

In light of Defendant Phifer's expert testimony, he requested that the Court use the "McMurry definition" to define "positional isomer" in the jury instructions. The District Court denied this request and used only the DEA definition of "positional isomer" when instructing the jury. *Phifer*, 909 F.3d at 381. The jury thereafter convicted Phifer.

The Eleventh Circuit summarized the issue before it in *Phifer* as "concern[ing] whether the definition of 'positional isomer' in 21 C.F.R. § 1300.01(b) encompasses the term 'positional isomer' as used in 21 C.F.R. § 1308.11(h)." *Phifer*, 909 F.3d at 381. The Court found that "the language of the regulation is fairly susceptible of being read to answer our precise question – whether the definition of "positional isomer" found in § 1300.01(b) governs the meaning of that term as used in § 1308.11(h) – both affirmatively and negatively" and therefore found the regulation to be "ambiguous." *Phifer*, 909 F.3d at 382. The Court further rejected the Government's contention that, in the alternative, the Court should "defer to the DEA's interpretation of its own regulations to define the term 'positional isomer' that appears in § 1308.11(h) as it is defined [in] § 1300.01(b)", instead holding that the rule of lenity governs and the Court "must look solely to the language of the regulatory provision at issue to determine whether it unambiguously prohibits the act charged." *Phifer*,

909 F.3d at 382-385.

In looking to language of the regulations at issue, the *Phifer* Court explained that it could not "ascertain on this record whether, at the time of Phifer's actions, the language of the regulations unambiguously prohibited possession with intent to distribute ethylone." *Phifer*, 909 F.3d at 385. Although the Court acknowledged that the definition of "positional isomer" in § 1308.11(h) presents a question of law that a court must decide, it recognized that to do so, "the court must ascertain the meaning of this technical term by looking to the science in which the term is used." *Phifer*, 909 F.3d at 385. The Circuit thus directed the lower court, on remand, to conduct an evidentiary hearing to "determine the definition or definitions of 'positional isomer' that are generally accepted within the scientific community", *i.e.* "a modified *Daubert* hearing." *Phifer*, 909 F.3d at 385. It concluded:

> The court may not choose among multiple definitions that are generally accepted within the scientific community. It must credit all definitions of "positional isomer" that the parties show to be generally accepted within the scientific community. Then, during the criminal trial, in the jury instructions, the district court must define "positional isomer" in all ways that it has found are generally accepted within the scientific community. It is for the jury to decide whether, as a matter of fact, ethylone satisfies all of the generally accepted definitions of a "positional isomer" of butylone, on which the district court instructs it. If the jury concludes that it does not meet at least one such definition, the rule of lenity requires it to return a verdict of not guilty. But if the jury finds that ethylone qualifies as a "positional isomer" of butylone under all definitions of that term that the district court provides to it, the jury should return a verdict of guilty.

*Phifer*, 909 F.3d at 386.

In the concurring opinion in *Phifer*, Judge Jordan noted that the "definitional void" in

7

the regulations "may present a vagueness problem even if, as the district court concluded, it was the result of 'an unintentional drafting omission.'" *Phifer*, 909 F3d at 387. However, the concurring Judge also noted the government's point that "notwithstanding any general vagueness concerns, there is evidence that here Mr. Phifer knew he was engaging in illegal conduct", which, in the government's opinion, "eliminates any vagueness claim." *Id*. at 388. Having raised the issue, Judge Jordan declined to "express any view how any vagueness issue should be resolved." *Id.*

On the record here, Defendant Wright, relying on *Phifer*, asks this Court to do the impossible: determine whether more than one generally accepted definition of "positional isomer" exists within the scientific community, and if so, whether each of those definitions would apply to the ethylone which Wright is charged with possessing with intent to distribute. Only after having determined the definition(s) of "positional isomer" would this Court be in a position to evaluate whether a vagueness challenge exists. As Judge Jordan noted, "*[i]f* there are a handful of generally accepted definitions of 'positional isomer' in the scientific community, there might be an as-applied vagueness problem." *Phifer*, 909 F.3d at 388 (emphasis added). The Eleventh Circuit specifically left the issue of what definition, or definitions, of "positional isomer" are generally accepted within the scientific community to the District Court to decide following a "modified *Daubert* hearing". *Id.* at 385-386.

In addition, the Eleventh Circuit made clear that, although the regulatory language at issue was ambiguous, it could not "ascertain on this record whether, at the time of Phifer's

8

actions, the language of the regulations unambiguously prohibited possession with intent to distribute ethylone," explaining that "[w]e know that § 1300.01(b)'s definition of 'positional isomer' does not govern the meaning of that term in § 1308.11(h)" but that "[w]e do not know what does", *Phifer*, 909 F.3d at 382, 385. Defendant Wright asks this Court to adopt the Eleventh Circuit's finding of ambiguity in the regulations, but ignores the Eleventh Circuit's further reasoning that it was unable to determine whether possession with intent to distribute ethylone was unambiguously prohibited by the regulations at the time of Phifer's actions (and thus at the time of Wright's actions and indictment). Here, although presented with the opportunity to do so, Defendant Wright did not present any testimony or documentary evidence at the November 25, 2020, evidentiary hearing to address the possibility of one or more generally accepted definitions of "positional isomer" in the scientific community. Rather, Defendant's counsel acknowledged that "the original order [scheduling the hearing] mentioned the motion to dismiss on vagueness" but stated that "[he did not] see any reason to provide additional argument," and that the issue was "covered adequately in the brief by defendant." (*See* Hr'g Tr., at 123). Nor did either party attach any exhibits in support of their respective positions which may provide this Court with direction as to the definition(s) of "positional isomer" and whether the regulations are unconstitutionally vague as applied to ethylone. Instead, Defendant only broadly states that "[a]t the time of [Wright's] offense, there were views within the scientific community that excluded ethylone from being an 'optical isomer, positional isomer or geometric isomer' of

butylone" (Doc. 82, at ¶ 5), citing to *Phifer*. However, Defendant properly acknowledges in his supporting brief that "the record in *Phifer* did not establish whether more than one scientifically accepted definitions existed for 'positional isomer'". (Doc. 83, at 6). Without citing to any cases which found 21 C.F.R. § 1308.11(h)(22)'s definition of "butylone, its optical, positional, and geometric isomers, salts and salts of isomers" ("Other names: bk-MBDB; 1-(1, 3-benzodioxol-5-yl)-2-(methylamino)butan-1-one)") to be unconstitutionally vague, and without presenting any evidence of record, Defendant requests that this Court dismiss the indictment as to the "bk-MDMA (ethylone), a derivative of 2-aminopropan-1-one".[2] Thus, although here Wright specifically does not concede that ethylone is a positional isomer of butylone (Doc. 83, at 6), he does so without presenting this Court with any expert testimony or other scientific evidence on this issue. Instead, Wright simply asks this Court to unilaterally find, without support, that he, or any ordinary person, was not on notice that ethylone was a positional isomer of butylone.

Defendant's position is even more tenuous where, even assuming that the definition of "positional isomer" is ambiguous under §1308.11(h), 21 U.S.C. § 841(a)(1), contains a scienter requirement. *See McFadden,* 576 U.S. at 197 ("a scienter requirement in a statute

---

[2] Although this Court acknowledges that the issue was not specifically in dispute, Defendant cites to no cases where a Court has found ethylone not to be a positional isomer of butylone. Instead, courts have consistently accepted ethylone to be a positional isomer of butylone, even when still only listed on the list of temporary controlled substances. *See e.g., United States v. Kelly,* 874 F.3d 1037, 1045 (9th Cir. 2017) ("It is undisputed here that ethylone is a positional isomer of butylone"); *Bah v. Barr,* 950 F.3d 203, 205 (4th Cir. 2020) (in immigration appeal, considering underlying 2015 conviction, and explaining that "[i]t is undisputed that ethylone, a positional isomer of butylone, qualifies as a Schedule I controlled substance under federal law, as does MDMA.").

alleviate[s] vagueness concerns, narrow[s] the scope of the [its] prohibition[,] and limit[s] prosecutorial discretion.")(internal quotation marks omitted). Section 841(a), under which Defendant is charged in the Indictment, requires the Government to prove knowledge on the part of the defendant with respect to the substance charged. *See McFadden*, 576 U.S. at 192 ("The ordinary meaning of § 841(a)(1) . . . requires a defendant to know only that the substance he is dealing with is some unspecified substance listed on the federal drug schedules. . . . That knowledge requirement may be met by showing that the defendant knew he possessed a substance listed on the schedules, even if he did not know which substance it was. . . . The knowledge requirement may also be met by showing that the defendant knew the identity of the substance he possessed."). Here, the required knowledge *mens rea* which must be proven to convict a defendant under § 841 considerably limits concerns as to any ambiguity in the definition of "positional isomer" as applied to § 1308.11(h). *See e.g., Colautti v. Frankin*, 439 U.S. 379, 395 (1979) ("This Court has long recognized that the constitutionality of a vague statutory standard is closely related to whether that standard incorporates a requirement of *mens rea*."); *United States v. James*, 953 F.3d 429, 435 (2020) ("By 1987, it was well established that a *mens rea* element could at least mitigate vagueness concerns."). In other words, the statutory provision under which Wright is charged make his conduct unlawful only if he "knows" he possessed the controlled substance.[3]

---

[3] As such, whether one of the substances that Wright is alleged to have possessed with the intent

In denying Defendant's motion to dismiss, the Court notes that Defendant's motion only requests dismissal of the indictment on the basis on vagueness. Wright did not address the Eleventh Circuit's decision to remand for a "modified *Daubert* hearing", nor did he request that, if this Court did not dismiss the indictment, he be permitted to present testimony on the issue of the definition of "positional isomer" for the jury's consideration and to be included in the jury instructions. Despite Defendant's failure to do so, the Court nonetheless finds that it may be appropriate to adopt the Eleventh Circuit's approach of holding a "modified *Daubert* hearing" to determine what definition or definitions of "positional isomer" are generally accepted within the scientific community prior to the commencement of trial.

The Court notes the Government position that the Court should reject the Eleventh Circuit's approach of requiring a "modified *Daubert* hearing" and instead to find that "the DEA's definition . . . controls irrespective of any other definition of 'positional isomer' which might be in common use." (Doc. 87, at 12). The Government has provided no legal authority for the assertion that, in a criminal case, the DEA's definition must control where there is a possible ambiguity in the regulatory language, and, to the extent the Government is attempting to (without citing) rely on *Auer* deference, it has cited to no case law within the Third Circuit which has clearly extended this doctrine to criminal cases. *See Phifer*, 909 F.3d at 385 (holding that "*Auer* deference does not apply in criminal cases" and Court "must

---

to distribute was, in fact, "bk-MDEA (ethylone)" as charged in the indictment, is a factual determination for the jury, as is the issue of whether Wright knew that "he was dealing with 'a controlled substance'", *McFadden*, 576 U.S. at 188-189.

12

look solely to the language of the regulatory provision at issue to determine whether it unambiguously prohibits the act charged"); *United States v. Moss*, 872 F.3d 304, 308, 314-315 (5th Cir. 2017) (finding *Auer* would apply if "this case involved only civil sanctions"). Nor has the Government set forth any analysis as to why, even if *Auer* deference may be appropriately raised here, the Court should apply this doctrine. *See Kisor v. Wilkie*, 139 S.Ct. 2400, 2416 (2019) (explaining that even if there is a genuine ambiguity in a rule, "the agency's reading must still fall within the bounds of reasonable interpretation" and even then, "not every reasonable agency reading of a genuinely ambiguous rule should receive *Auer* deference"; instead a court must make an independent inquiry into whether the character and context of the agency interpretation entitles it to controlling weight.").

For these reasons, the Court will deny Defendant's Motion to Dismiss Indictment for Vagueness (Doc. 82). However, it will permit Defendant, should he so choose, to file a motion for a modified *Daubert* hearing for this Court to determine, by a preponderance of the evidence, the question of law of what definition or definitions of "positional isomer" are generally accepted within the scientific community.

### III.   CONCLUSION

For the reasons set forth herein, Defendant's Motion to Dismiss Indictment for Vagueness (Doc. 82) will be denied. A separate Order follows.

Robert D. Mariani
United States District Judge

13