IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | 3:16-CR-255 |
| | : | (JUDGE MARIANI) |
| CHAY WRIGHT, | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

### I. INTRODUCTION AND PROCEDURAL HISTORY

On September 6, 2016, a federal grand jury indicted Defendant Chay Wright on one

count of possession with intent to distribute heroin, "bk-MDEA (ethylone), a derivative of 2-

aminopropan-1-one", cocaine, and cocaine base ("crack") in violation of 21 U.S.C. §§

841(a)(1) and 841(b)(1)(B) (Doc. 1).[1]  Trial in this matter is now scheduled to commence on

April 19, 2021 (Doc. 115).

Presently before the Court are (1) the Government's "Motion in Limine Regarding

Introduction of Judicial Statements" (Doc. 106) and (2) the Government's Federal Rule of

Evidence 404(b) Notice and Motion in Limine to Admit Criminal Histories Pursuant to

Federal Rule of Evidence 609 (Doc. 120).  For the reasons that follow, the Court will grant

the Government's first motion and deny the Government's second motion without prejudice.

---

[1] At the Government's request, and with Defendant's concurrence, the Indictment was amended on
February 18, 2021, to strike the language relating to bk-MDEA (ethylone).  (Doc. 116).

## II. ANALYSIS

The Court notes at the outset that it exercises its discretion to rule *in limine* on evidentiary issues "in appropriate cases." *In re Japanese Elec. Prods. Antitrust Litig.*, 723 F.2d 238, 260 (3d Cir.1983), *rev'd on other grounds sub nom*. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). Although "[t]he purpose of a motion in limine is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence. . . [, t]he trial court should exclude evidence on a motion in limine only when the evidence is clearly inadmissible on all potential grounds." *United States v. Tartaglione*, 228 F.Supp.3d 402, 406 (E.D.Pa. 2017) (internal citations omitted).

Further, while motions *in limine* may serve as a useful pretrial tool that enables a more in-depth briefing than would be available at trial, a court may defer ruling on such motions "if the context of trial would provide clarity." *Frintner v. TruePosition*, 892 F.Supp.2d 699, 707 (E.D. Pa. 2012) (citing *Japanese Elec. Prods.*, 723 F.2d at 260). In addition, "motions in limine often present issues for which final decision is best reserved for a specific trial situation." *Walden v. Georgia-Pacific Corp.*, 126 F.3d 506, 518 n.10 (3d Cir. 1997). It is important to note that "in limine rulings are not binding on the trial judge, and the judge may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000). *See also*, *Luce v. United States*, 469 U.S. 38, 41-42 (1984) (". . . even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling.").

## A. Motion in Limine Regarding Introduction of Judicial Statements

The Government first moves to "exclude the use or introduction of prior judicial statements concerning Wilkes-Barre City Police Department Patrolman Jeffrey Ference." (Doc. 106, at 1). Specifically, the Government "seeks to prevent the defendant from cross-examining Officer Ference based on the Court's opinion in an unrelated case, *United States v. Gilliam*." (Doc. 107, at 4-5).

The Government's motion stems from a memorandum opinion issued by this Court in an unrelated criminal action, *United States v. Gilliam* (3:17-cr-258-RDM) wherein this Court granted Defendant Gilliam's motion to suppress (3:17-cr-258-RDM, Doc. 103, 104; *see also*, *id.* at Doc. 115, 116 (opinion and order denying Government's motion for reconsideration)).

The procedural history in *Gilliam*, as explained by this Court in its memorandum opinion was as follows:

> The charges [against Gilliam] stem from a controlled purchase by a confidential informant ("CI") from Defendant in Wilkes-Barre, Pennsylvania on July 21, 2017, where the CI arranged for a purchase of 10 grams of a pink substance in exchange for $1,000.  (Doc. 40 at 5.)  As soon as the controlled buy was concluded, "officers moved in and affected an arrest." (Doc. 37 at 10 (Citing Ex. A at 7, July 22, 2017, Affidavit of Probable Cause (Doc. 37-1 at 7).)  Officers subsequently conducted a search of a house at 374 Main Street, Wilkes-Barre, Pennsylvania, to which they gained entry using keys confiscated from Defendant at the time of his arrest.  (Doc. 37 at 13 (citing Doc. 37-1 at 8).)  Once inside the building, they used another confiscated key to gain entry into a locked room on an upper floor of the house.  (*Id.*)  Based on the July 21, 2017, search of 374 North Main Street, a search warrant was applied for and issued on July 22, 2017.  (Doc. 37-1.)  The search was conducted on July 22, 2017, by the Pennsylvania State Police Clandestine Lab Team and yielded,

*inter alia*, controlled substances, firearms, and cell phones.  (Doc. 37-1 at 11-13; Doc. 37-2 at 2-3.)

With the pending Motion, Defendant seeks to suppress all physical evidence seized from 374 North Main Street in Wilkes-Barre, Pennsylvania: officers' initial entry into the building and subsequent entry into a locked interior room took place without a warrant under circumstances which did not give rise to a valid exception to the warrant requirement.  (*Id*. ¶¶ 11-12.)  Defendant further maintains that, because the officers were not lawfully in the building, they could not use information about contraband observed therein in an affidavit of probable cause for a search warrant and without the information, the warrant lacked probable cause.  (*Id*. ¶¶ 13-14.)  Defendant requested a suppression hearing, including a *Franks* hearing under *Franks v. Delaware*, 438 U.S. 154 (1978) (*id*. at 4), the latter "because the affidavit of probable cause for the search warrant contained materially false statements made knowingly, intentionally, and with reckless disregard for the truth" (*id.* ¶ 15).

(3:17-cr-258-RDM, Doc. 103, at 1-2).  At the suppression hearing in *Gilliam*, held on August 19, 2019, Wilkes-Barre Police Patrolman Jeffrey Ference, Kingston Police Department Detective Edward Palka, and several other individuals, each testified.

The Court, in determining that a Fourth Amendment violation of Defendant Gilliam's rights had occurred, explained in part:

Based on the evidence of record, the Court finds that the officers [including Ference] proceeded without proper justification when they entered 374 North Main Street without a warrant.  As to the central question of whether the Government has proven by a preponderance of the evidence that the officers conducted the warrantless search in a manner consistent with the Fourth Amendment, the evidence shows that the officers' alleged assessment that a true emergency existed was neither credible nor objectively reasonable.  A reasonable officer considering the facts ascertainable upon a reasonable investigation would not have concluded that warrantless entry was necessary to address a true emergency related to Defendant's children.  Because the Government did not show that officers acted on a *reasonable* belief that Defendant's children were in imminent danger," *Mallory*, 765 F.3d at 383-84, the Government has not established by a preponderance of the evidence that

exigent circumstances justified the warrantless search of 374 North Main Street, and, thus, the warrantless entry and search of the residence was not reasonable under the Fourth Amendment.

(*Id.* at 43-44). The Court further found that the Government had failed to show that the inevitable discovery doctrine was applicable in the case (*id.* at 50), and that the good faith exception was also not applicable where "the Magistrate Judge could have been misled by the Affidavit [of Probable Cause]" submitted by Officers Palka and Ference (*id.* at 57) (*see also, id.* at 57-58 ("The objective reasonableness of reliance on the warrant is undermined when it is considered that the actions of the affiants, Palka and Ference, are relevant in the good faith exception analysis, . . . and the Court has determined that [Palka and Ference's] pre-warrant actions were not objectively reasonable and their testimony was less than credible.")).

In the present case, the Government argues that "the defendant should not be permitted to use the Court's credibility determinations at the *Gilliam* suppression hearing to impeach Officer Ference at trial because those determinations are inadmissible hearsay, and if not hearsay, they would be more prejudicial then probative under Rule 403." (Doc. 107, at 13). In response to the Government's motion, Defendant argues that if the Court imposes the limits requested by the Government, Wright's rights under the Sixth Amendment "will be violated" and further that this Court's "judicial findings" in *Gilliam* "are both an appropriate area of cross examination under Fed. R. Evid. 608(b) and will not confuse or mislead the jury under Fed. R. Evid. 403." (Doc. 111, at 7, 8).

Pursuant to Federal Rule of Evidence 608,

> Except for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness. But the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of:
>
>   (1) the witness; . . .

Fed. R. Evid. 608(b)(1).  In 2003, Rule 608 was amended to "clarify that the absolute prohibition on extrinsic evidence applies only when the sole reason for proffering that evidence is to attack or support the witness' character for truthfulness."  Fed. R. Evid. 608 advisory committee notes to 2003 amendment.  Thus, "[u]nder Rule 608(b), specific instances of conduct of a witness, other than conviction for a crime, may not be proved at trial through extrinsic evidence for the purpose of attacking the witness's character for truthfulness [but t]he court may at its discretion permit questioning about specific instances of conduct on cross-examination, but only if the conduct is probative of the witness's character for truthfulness or untruthfulness." *United States v. Williams*, 464 F.3d 443, 448 (3d Cir. 2006).  As such, Rule 608 "prohibits extrinsic evidence on cross-examination and thus [the] crossexaminer is 'stuck with whatever response' witness gives". *United States v. Whitmore*, 359 F.3d 609, 622 (D.C. Cir. 2004) (quoting *United States v. Brooke*, 4 F.3d 1480, 1484 (9th Cir. 1993)).  *Accord*, *United States v. Davis*, 183 F.3d 231, 257 n.12 (3d Cir. 1999) *amended by* 197 F.3d 662 (3d Cir. 1999) (although Government could question Defendant as to the facts underlying prior bad acts that were probative of his truthfulness or untruthfulness, "If [Defendant] denies that such events took place, however, the government

6

cannot put before the jury [extrinsic] evidence").  The extrinsic evidence prohibition of Rule

608(b) further "bars any reference to the consequences that a witness might have suffered

as a result of an alleged bad act."  Fed. R. Evid. 608 advisory committee notes to 2003

amendment.  *See also, Davis*, 183 F.3d at 257 n.12.  The purpose of Rule 608(b)'s "ban on

extrinsic evidence . . .  is 'to avoid minitrials on wholly collateral matters which tend to

distract and confuse the jury ... and to prevent unfair surprise arising from false allegations

of improper conduct.'"  *United States v. Saada*, 212 F.3d 210, 222 (3d Cir. 2000) (quoting

*Carter v. Hewitt*, 617 F.2d 961, 971 (3d Cir. 1980)).

However, "[b]y limiting the application of the Rule to proof of a witness' character for

truthfulness, the [2003] amendment [to Rule 608] leaves the admissibility of extrinsic

evidence offered for other grounds of impeachment (such as contradiction, prior

inconsistent statement, bias and mental capacity) to Rules 402 and 403."  Fed. R. Evid. 608

advisory committee notes to 2003 amendment.  Therefore, this Court's inquiry into the

admissibility of the Court's credibility determinations in *Gilliam* is also guided by the analysis

necessary under Rule 403, which provides that relevant evidence may be excluded "if its

probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing

the issues, [or] misleading the jury", Fed. R. Evid. 403.  *See e.g. United States v. Lundy*,

416 F.Supp.2d 325, 331 (E.D. Pa. 2005) ("The Court's inquiry under Rule 608(b) is guided

by the analysis required by Rule 403. . . It is within the discretion of the trial court to decide if

the questions on cross-examination relating to the prior conduct of the witness are probative

of truthfulness or untruthfulness and whether the probative value is outweighed by the

prejudicial effect."). Rule 403 "authorizes a district court to exclude collateral matters that

are likely to confuse the issues. . . A matter is collateral if it is factually unrelated to the case

such as an unrelated criminal investigation." *United States v. Georgiou*, 777 F.3d 125, 144

(3d Cir. 2015) (internal citations, quotation marks and brackets omitted).

A criminal defendant is guaranteed the right "to be confronted with the witnesses

against him" under the Confrontation Clause of the Sixth Amendment. U.S. Const. amend.

VI.

> The Supreme Court has held that "[t]he main and essential purpose of
> confrontation is to secure for the opponent the opportunity of cross-
> examination." *Davis v. Alaska,* 415 U.S. 308, 315–316, 94 S.Ct. 1105, 39
> L.Ed.2d 347 (1974) (quoting 5 J. Wigmore, Evidence § 1395, p. 123 (3d
> ed.1940)). Moreover, "exposure of a witness' motivation in testifying is a proper
> and important function of the constitutionally protected right of cross-
> examination." *Id.* at 316-317, 94 S.Ct. 1105 (citing *Greene v. McElroy,* 360 U.S.
> 474, 496, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959)). Nevertheless, "trial judges
> retain wide latitude insofar as the Confrontation Clause is concerned to impose
> reasonable limits on such cross-examination based on concerns about, among
> other things, harassment, prejudice, confusion of the issues, the witness'
> safety, or interrogation that is repetitive or only marginally relevant."

*United States v. Silveus*, 542 F.3d 993, 1119 (3d Cir. 2008). The Third Circuit has thus set

forth a two-part inquiry to determine whether a trial judge's limitation on cross-examination

violated the Defendant's rights under the Sixth Amendment:

> First, we must determine whether that ruling significantly inhibited Chandler's
> effective exercise of her right to inquire into either witness's "motivation in
> testifying"; and second, if the District Court's ruling did significantly inhibit
> Chandler's exercise of that right, whether the constraints it imposed on the

> scope of Chandler's cross-examination fell within those "reasonable limits"
> which a trial court, in due exercise of its discretion, has authority to establish.

*United States v. Chandler*, 326 F.3d 210, 219 (3d Cir. 2003). As a result, "given the District

Court's wide discretion in limiting cross-examination, a restriction will not constitute

reversible error unless it is so severe as to constitute a denial of the defendant's right to

confront witnesses against him and it is prejudicial to substantial rights of the defendant."

*Georgiou*, 777 F.3d at 144-145 (internal quotation marks and brackets omitted).

As previously set forth, Rule 608(b) addresses the admissibility of extrinsic evidence.

Extrinsic evidence is "'evidence offered through other witnesses rather than through cross-

examination of the witness himself or herself'". *United States v. Murray*, 103 F.3d 310, 321

(3d Cir. 1997) (quoting *United States v. McNeill*, 887 F.2d 448, 453 (3d Cir. 1989)). *See*

*also, United States v. Nelson*, 365 F.Supp.2d 381, 389 (S.D.N.Y. 2005) ("Courts agree that

the term 'extrinsic evidence,' as used in Rule 608(b), encompasses documentary

evidence.") (collecting cases). The Court's written opinion in *Gilliam* is squarely

encompassed within the definition of extrinsic evidence. The language of Rule 608(b), and

the supporting case law, make clear that Rule 608(b) would bar Defendant Wright from

using this Court's written opinion in *Gilliam*, including the specific contents, quotations, or

language therein as well as any summary of the opinion, for the purpose of attacking

Ference's character for truthfulness.

Furthermore, Rule 608(b) also prohibits Defendant from otherwise presenting this

Court's credibility determinations set forth in the written opinion in *Gilliam* at trial. To find

otherwise would impermissibly "inject[] the views of a third person into the case to contradict

the witness" and allow counsel to "'circumvent the no-extrinsic-evidence provision'" of Rule

608(b). *Davis*, 183 F.3d at 257 n.12.

Here, Defendant urges this Court to look to the case law set forth by several Circuits

outside the Third Circuit. For example, in *United States v. Dawson*, the Seventh Circuit

found that:

> the decision whether to allow a witness to be cross-examined about a judicial
> determination finding him not to be credible is confided to the discretion of the
> trial judge; it is not barred by Rule 608(b), which, to repeat, is a rule about
> presenting extrinsic evidence, not about asking questions.

434 F.3d 956, 959 (7th Cir. 2006). In *United States v. White*, the Second Circuit, in

conducting a Rule 608(b) analysis, made clear that a prior judicial finding that discredited

the testimony of a Government witness in an unrelated case was improperly excluded,

explaining that one of the "dispositive[]" facts in its decision was that:

> [T]he defense simply sought to inquire "whether [Detective] Herrmann
> previously gave testimony ... under oath, in another federal gun possession
> case, and whether the judge in that case refused to credit six different aspects
> of [that] testimony." . . . It did not seek to delve into the facts of the *Goines* case
> or inquire about the specific instances when Herrmann's testimony was
> discredited.

692 F.3d 235, 251 (2d Cir. 2012) (internal brackets omitted). The Tenth Circuit in *United*

*States v. Woodard*, 699 F.3d 1188 (10th Cir. 2012), similarly determined that past judicial

credibility determinations are not precluded under Rule 608(b), and adopted a seven-part

test set forth by the Second Circuit in *United States v. Cedeno*, 644 F.3d 79 (2d Cir. 2011)

10

which a Court should apply in determining whether to admit the past judicial credibility

determinations under Rule 608(b).

Nonetheless, Defendant's argument that, in light of the case law in other Circuit

Courts, he should not be precluded from cross-examining Officer Ference as to this Court's

credibility determinations in *Gilliam* is foreclosed by the Third Circuit's decision in *Davis*.

There, the Third Circuit found that inquiry into two prior incidents was proper, as they went

to Defendant's truthfulness, specifically, inquiry into Defendant's "forty-four-day suspension

that he had received for misappropriating departmental gasoline for use in his personal

vehicle and putting a false name in a gas log" and "an incident in which Davis was found to

have taken a subway pass away from a young man and ripped it up".  *Davis*, 183 F.3d at

256-257.  However, the Third Circuit elaborated:

> This does not suggest that the government may introduce either reports or
> evidence that Davis was suspended for forty-four days, or documentation of
> the Internal Affairs determination that Davis lied about the subway-pass
> incident. Such evidence would not only be hearsay to the extent it contains
> assertion of fact, it would be inadmissible extrinsic evidence under Rule 608(b).
> More precisely, the government cannot make reference to Davis's forty-four
> day suspension or that Internal Affairs found that he lied about the subway-
> pass incident. The government needs to limit its cross-examination to the *facts*
> *underlying* those events. To impugn Davis's credibility, the government
> properly can question Davis about misappropriating departmental gasoline for
> personal use and putting a false name in a gas log, and it may question Davis
> about lying to an Internal Affairs officer about ripping up an individual's subway
> pass. If he denies that such events took place, however, the government
> cannot put before the jury evidence that he was suspended or deemed a liar
> by Internal Affairs. As Professor Saltzburg aptly warns, "counsel should not be
> permitted to circumvent the no-extrinsic-evidence provision [in Rule 608(b)(1)]
> by tucking a third person's opinion about prior acts into a question asked of the
> witness who has denied the act." Stephen A. Saltzburg, *Impeaching the*

*Witness: Prior Bad Acts and Extrinsic Evidence.* 7 CRIM. JUST. 28. 31 (Winter 1993). Allowing such a line of questioning not only puts hearsay statements before the jury, it injects the views of a third person into the case to contradict the witness. This injection of extrinsic evidence not only runs afoul of Rule 608(b), but also sets the stage for a mini-trial regarding a tangential issue of dubious probative value that is laden with potential undue prejudice.

*Id.* at 257 n. 12 (italics in original).  Defendant Wright does not address *Davis*, and, crucially,

fails to note that *Davis*' interpretation as to the application of Rule 608(b), and specifically its

determination that the consequences that a witness might have suffered as a result of the

bad act(s) are inadmissible, is at odds with the very cases upon which Defendant relies on

in support of his argument.  As noted by the Seventh Circuit in determining that Rule 608(b)

"does not prohibit 'lines of questioning,' including those 'regarding the punishment imposed

on a witness for a given course of conduct'":

As the Government correctly notes, our interpretation of Rule 608(b) in *United States v. Dawson,* 434 F.3d 956 (7th Cir. 2006), conflicts with the position of both the Advisory Committee and the Third Circuit, *see* Fed. R. Evid. 608 advisory committee's note to 2003 amendment; *United States v. Davis,* 183 F.3d 231, 257 n. 12 (3d Cir.), *amended by* 197 F.3d 662 (3d Cir. 1999), and has been criticized and not followed by some commentators, *see* 4 Michael H. Graham, *Handbook of Federal Evidence* § 608:4 (7th ed.2012) (criticizing our holding in *Dawson*); 1 Kenneth S. Broun et al., *McCormick on Evidence* § 41 (7th ed.2013) (endorsing the interpretation of the Advisory Committee). However, the other circuits to have ruled on the matter agree with our view. *See United States v. Woodard,* 699 F.3d 1188, 1195 (10th Cir. 2012); *United States v. Cedeño,* 644 F.3d 79, 82-83 (2d Cir. 2011); *United States v. Whitehead,* 618 F.2d 523, 529 (4th Cir. 1980); *see also* Peter Walkingshaw, Note, *Prior Judicial Findings of Police Perjury: When Hearsay Presented as Character Evidence Might Not Be Such a Bad Thing,* 47 Colum. J.L. & Soc. Probs. 1, 20 (2013) (noting that "the consistent trend among the Circuits has been to ... allow cross-examination into the consequences of prior conduct by a witness that tends to show dishonesty (at least in the absence of a hearsay objection)").

*United States v. Dvorkin*, 799 F.3d 867, 883 & n.38 (7th Cir. 2015).  This note by the

Seventh Circuit makes clear that Wright's heavy reliance on *Dawson*, *Cedeno*, and

*Woodard* (*see generally*, Doc. 111, at 7-15) for the assertion that prior judicial

determinations of credibility are admissible is largely unhelpful here.  This Court is bound by

the precedent of the Third Circuit, and thus, to the extent that a conflict exists between the

law set forth by the Third Circuit and that of other Circuit Courts, the determinations of the

other Circuit Courts are of limited value.

Even if this Court were to conclude that its credibility determinations in *Gilliam* were

not barred by Rule 608(b), those statements would nonetheless consist of inadmissible

hearsay.

Although Defendant does not directly address the Government's argument that a

judge's credibility determination is inadmissible hearsay (Doc. 107, at 9-13), none of the

cases that Wright relies on in arguing that Rule 608(b) permits a defendant to cross-

examine a witness on prior judicial findings of credibility address a hearsay issue.  In

particular, while Defendant urges this Court to apply the seven-factor non-exhaustive test

set forth by the Second Circuit in *United States v. Cedeno*, and adopted by the Tenth Circuit

in *United States v. Woodard*, to determine whether past judicial credibility findings are

admissible under Rule 608(b) (*see* Doc. 111, at 8-11), both cases expressly declined to

address the possible hearsay issue.[2]  *See Cedeno*, 644 F.3d at 83 n.3 (declining to address

Government's argument that past judicial credibility determinations are inadmissible

hearsay where argument was first raised during oral argument before the Circuit Court and

thus was forfeited); *Woodard*, 699 F.3d at 1196 n.5 (noting "that neither party addressed

whether cross-examination of the inspector about the *Variste* court's credibility

determination would raise hearsay concerns" and therefore declining to address the issue).

Nor do the other cases relied upon by Defendant Wright support a conclusion that no

hearsay issue would exist as to the introduction of prior judicial determinations at trial.  *See*

*White*, 692 F.3d at 244-245 ("The district court did not consider whether the . . . prior

credibility findings are inadmissible hearsay, and the parties have not addressed that issue

on appeal. We therefore have no occasion to decide hearsay questions, and nothing in this

opinion forecloses the district court from considering hearsay objections to this evidence (or

any other evidence) at re-trial."); *Dawson*, 434 F.3d at 957 (finding that decision whether to

allow a witness to be cross-examined about a judicial determination finding him not credible

is confided to the discretion of the district court judge, but only specifically stating that it is

not barred by Rule 608(b), and not addressing the possibility of a hearsay issue).

 In contrast, several cases support the Government's position that prior judicial

determinations of credibility may constitute inadmissible hearsay.  As noted by the Eighth

---

[2] In quoting the factors set forth by the Second Circuit in *Cedeno*, Defendant omits the first two factors, thus mistakenly stating that the Court in *Cedeno*, and thereafter in *Woodard*, applied a five factor test rather than a seven factor test (Doc. 111, at 9).

Circuit, "[a] majority of our sister circuits to consider the issue have held that judicial findings

of facts are hearsay, inadmissible to prove the truth of the findings unless a specific hearsay

exception exists." *United States v. Jeanpierre*, 636 F.3d 416, 423 (8th Cir. 2011) (internal

quotations omitted) (citing Fourth Circuit, Ninth Circuit, Tenth Circuit, and Eleventh Circuit

but noting decision in *Dawson* finding that the admissibility of prior judicial determinations of

credibility are confided to discretion of trial judge).[3]

The Third Circuit has encouraged "firm adherence to the hearsay rules (Rules 801-

807) in determining whether a proffered statement truly is admissible in the first instance."

*Saada*, 212 F.3d at 221 n.12.

> It is, of course, not the role of the trial judge to make a credibility determination
> in a criminal jury trial. Nonetheless, when an out-of-court declaration is offered
> for the truth of the matter asserted, it becomes "hearsay," subject to the
> exclusions in Rule 801(d), and is presumptively inadmissible, subject only to
> carefully defined exceptions. *See* Fed.R.Evid. 802-804, 807.

*Id.* Defendant Wright has not pointed to any applicable hearsay exceptions, nor is the Court

aware of any applicable exceptions. Rather, as explained by another Court in this District

when addressing the identical issue to that now before this Court:

> . . . "the Government is correct that judicial findings generally do not fall under
> the hearsay exception established by Rule 803(8)(C)," [which] provides that,
> "in civil actions and proceedings and against the Government in criminal cases,
> factual findings resulting from an investigation made pursuant to authority
> granted by law, [are not excluded by the hearsay rule] unless the sources of
> information or other circumstances indicate lack of trustworthiness." *U.S. v.*

---

[3] Although the Eighth Circuit noted its sister circuits who had found judicial findings of fact to be hearsay, this Court acknowledges that the Eight Circuit declined to reach the issue in *Jeanpierre*. *See Jeanpierre*, 636 F.3d at 424 ("In any event, we need not decide whether judicial credibility determinations are inadmissible hearsay. . .").

*Nelson*, 365 F.Supp.2d 381, 388 (S.D. N.Y. 2005). Thus, Judge Mariani's opinion in Gilliam is an out of court statement offered for the truth of the matter asserted, *i.e.*, to show Ference's testimony in Gilliam was not entirely credible, and thus constitutes hearsay. See *Internat'l Land Acquisitions, Inc. v. Fausto*, 39 Fed.Appx. 751, 756-57 (3d Cir. 2002) (citing *Nipper v. Snipes*, 7 F.3d 415, 417 (4th Cir. 1993) ("Rule 803(8)(C), on its face, does not apply to judicial findings of fact; it applies to 'factual findings resulting from an investigation made pursuant to authority granted by law.' Fed.R.Evid. 803(8)(C). A judge in a [ ] trial is not an investigator, rather a judge."); *United States v. Jones*, 29 F.3d 1549, 1554 (11th Cir. 1994) (finding that judicial findings are inadmissible hearsay that cannot be corrected under 803(8)); *In re Japanese Elec. Prod. Antitrust Litig.*, 723 F.2d 238, 275 (3d Cir. 1983), *rev'd sub nom. Matsushita Elect. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348 (1986) (concluding that prior judicial findings were not admissible under Rule 803(8)(C), and that the trustworthiness analysis required under Rule 803(8)(C) would be unsuited to evaluating judicial findings because a judge is not a proper witness under Rule 605)).

*United States v. Guerrier*, -- F.Supp.3d --, 2021 WL 674248, *5 (M.D.Pa. 2021). This

reasoning is further squarely supported by the Third Circuit's decision in *Davis*, finding that

allowing cross-examination as to a determination that Defendant was suspended or that

Internal Affairs determined that he lied to them "puts hearsay statements before the jury"

and "injects the views of a third person into the case to contradict the witness", *Davis*, 183

F.3d at 257 n.12.

Thus, Defendant will not be permitted to use this Court's credibility determinations

with respect to Ference's testimony in *Gilliam*, or make any reference thereto, on cross-

examination of Ference at trial.

Even if this Court were to find that its prior judicial credibility determinations in *Gilliam*

were admissible under Rule 608(b) and did not constitute inadmissible hearsay, the

probative value of such evidence is substantially outweighed by a danger of confusing the

issues and misleading the jury, *see* Fed. R. Evid. 403. *United States v. Gilliam* is an

unrelated case to the present matter, and the facts surrounding Officer Ference and Officer

Palka's actions in that case lack any significant similarity to those here. Allowing any

reference to this Court's credibility determinations would present "collateral matters that are

likely to confuse the issues", specifically, a matter "factually unrelated to [this] case such as

an unrelated criminal investigation", *Georgiou*, 777 F.3d at 144. Reference to the Court's

credibility determinations in *Gilliam* would further necessarily require a "mini-trial regarding a

tangential issue of dubious probative value that is laden with potential undue prejudice",

*Davis*, 183 F.3d at 257 n. 12.[4]

Finally, just as the Court in *Guerrier* correctly noted, "since the defendant will be able

to cross examine Ference regarding all of his actions taken in the instant case, as well as to

---

[4] Despite the limited utility of *Dawson* to courts in this Circuit, this Court's reasoning is nonetheless
supported by the Seventh Circuit's opinion. In determining that the decision whether to allow a witness to
be cross-examined about a judicial determination finding that witness not to be credible is confided to the
discretion of the trial judge, the Court cautioned:

> It would be one thing to ask a witness whether a judge or jury had disbelieved his testimony
> in the past if a pattern of dishonest testimony by the witness could be shown, and quite
> another to ask such a question when the witness had testified frequently and been
> disbelieved in only one case or where it was unclear whether and why the witness's
> testimony had been rejected. It would be within the district judge's discretion to permit the
> question in the first case and to forbid it in the second.

*Dawson*, 434 F.3d at 959. Here, although Defendant has offered a proffer about his "potential cross
examination" (Doc. 111, at 13-14), there is no suggestion that Defendant intends to, or can, show a pattern
of dishonest testimony by Ference in the past. In fact, the Court notes that it recently found Ference to be
credible at a suppression hearing in the above-captioned case now at issue. Thus, the probative value of
cross-examination of Ference as to this Court's prior credibility determinations in *Gilliam*, where the same
Court has found Ference to be credible in this case, further risks a danger of confusing the issues and
misleading the jury.

inquire into his motivation for testifying, the restriction prohibiting him from using the court's

credibility findings in Gilliam to impeach Ference is not so severe as to constitute a denial of

the defendant's right to confront witnesses against him and it is not prejudicial to his

substantial rights", *Guerrier*, 2021 WL 674248 at * 8.  Precluding Defendant Wright from

using this Court's *Gilliam* opinion, and the credibility determinations therein, does not

"significantly inhibit[] [Wright's] effective exercise of [his] right to inquire into . . . [Ference's]

motivation in testifying", *Chandler*, 326 F.3d at 219, and the Court's decision herein falls

within its discretionary authority to establish reasonable limits as to the scope of cross-

examination.

For the foregoing reasons, the Government's "Motion in Limine Regarding

Introduction of Judicial Statements" (Doc. 106) will be granted as set forth herein.

## B.  Federal Rule of Evidence 404(b) Notice/Motion in Limine to Admit Criminal Histories Pursuant to Federal Rule of Evidence 609

On March 5, 2021, the Government filed its Notice of Intent to Introduce Evidence of

Other Crimes, Wrongs, or Acts Pursuant to Federal Rule of Evidence 404(b).  (Doc. 119).

The Government now seeks to introduce evidence of two prior criminal convictions for drug

offenses by Wright pursuant to Federal Rule of Evidence 404(b). (Doc. 120).  Specifically,

the Government seeks to introduce evidence of (1) Wright's September 24, 2003 guilty plea

to possession with intent to distribute a controlled dangerous substance within 1,000 feet of

a school property in Passaic County Superior Court, in Paterson, New Jersey, and (2)

Wright's May 18, 2006 guilty plea to possession with intent to distribute a controlled

dangerous substance within 1,000 feet of a school property in Passaic County Superior

Court, in Paterson, New Jersey.  (Doc. 120, at ¶ 4).[5]  The Government seeks to introduce

this evidence "to establish the defendant's knowledge of the nature of the heroin, cocaine

and cocaine base (crack) in [Wright's] possession, that the defendant's possession of the

heroin, cocaine and cocaine base (crack) was not a mistake, and that the defendant

intended to distribute the heroin, cocaine and cocaine base (crack) on his person and in his

possession at his residence." (Doc. 120, at ¶ 5); (Doc. 121, at 2) (asserting that this

evidence demonstrates that Wright's possession of narcotics in the present case "was not a

mistake nor intended for personal use, and that he intended to distribute those narcotics.").

The Government further argues that, should Wright testify at trial, it should be permitted to

impeach Wright with evidence of these convictions pursuant to Federal Rule of Evidence

609.  (Doc. 121, at 2).  For the foregoing reasons, the Government's motion will be denied

without prejudice.

Federal Rule of Evidence 404(b) provides that "[e]vidence of any other crime, wrong,

or act is not admissible to prove a person's character in order to show that on a particular

occasion the person acted in accordance with the character."  Fed. R. Evid. 404(b)(1).

However, "evidence may be admissible for another purpose, such as proving motive,

opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of

---

[5] The Government's motion and accompanying brief give no indication of how the Government intends to enter the convictions into evidence, and the Court expresses no opinion herein as to what the Government's obligations are with respect to how to properly do so.

accident." *Id*. at 401(b)(2).  "Rule 404(b) is a rule of general exclusion . . .  That is, Rule

404(b) directs that evidence of prior bad acts be excluded – *unless* the proponent can

demonstrate that the evidence is admissible for a non-propensity purpose." *United States v.*

*Repak*, 852 F.3d 230, 240 (3d Cir. 2017) (internal citations and quotation marks omitted)

(emphasis in original).  As explained by the Supreme Court:

> Federal Rule of Evidence 404(b) – which applies in both civil and criminal cases
> – generally prohibits the introduction of evidence of extrinsic acts that might
> adversely reflect on the actor's character, unless that evidence bears upon a
> relevant issue in the case such as motive, opportunity, or knowledge. Extrinsic
> acts evidence may be critical to the establishment of the truth as to a disputed
> issue, especially when that issue involves the actor's state of mind and the only
> means of ascertaining that mental state is by drawing inferences from conduct.

*Huddleston v. United States*, 485 U.S. 681, 685 (1988).  Thus, "[t]he threshold inquiry a

court must make before admitting similar acts evidence under Rule 404(b) is whether that

evidence is probative of a material issue other than character." *Id.* at 686.

Rule 404(b) carries "no presumption of admissibility." *United States v. Caldwell*, 760

F.3d 267, 276 (3d Cir. 2014) (internal quotation marks omitted).  Admissibility of other-acts

evidence under Rule 404(b) therefore requires the proponent of the prior convictions, here,

the Government, to meet its burden of "satisfy[ying] four distinct steps":

> (1) the other-acts evidence must be proffered for a non-propensity purpose; (2)
> that evidence must be relevant to the identified non-propensity purpose; (3) its
> probative value must not be substantially outweighed by its potential for
> causing unfair prejudice to the defendant; and (4) if requested, the other-acts
> evidence must be accompanied by a limiting instruction.

*Repak,* 852 F.3d at 241 (citing *Huddleston* 485 U.S. at 691; *Caldwell*, 760 F.3d at 277-278).

A district court should apply "care and precision . . . in ruling on the admission of prior act

evidence for a non-propensity purpose" and, if admitting the evidence, must "articulate

reasons why the evidence also goes to show something other than character. . . . The

reasoning should be detailed and on the record; a mere recitation of the purposes in Rule

404(b)(2) is insufficient." *Caldwell*, 760 F.3d at 277 (internal citations and quotation marks

omitted).  If the proponent of the evidence fails to meet its burden of satisfying the first two

steps, a Court need not address the final two steps.  *Caldwell*, 760 F.3d at 283.

In applying the four distinct steps, the Government here must first identify a non-

propensity purpose for admission of the evidence that is "at issue" in, or relevant to, this

case. *See Caldwell*, 760 F.3d at 276.  The Government argues that the prior drug

convictions demonstrate Wright's "knowledge of the nature of the cocaine base (crack) on

his person, together with the heroin, cocaine, and cocaine base (crack) located [at his]

residence, the absence of a mistake, and his intent to distribute those controlled

substances." (Doc. 121, at 7-8).  Although knowledge, absence of mistake, and intent, are

proper non-propensity purposes under Rule 404(b)(2), the Court is not persuaded that, prior

to commencement of trial, it can determine whether these listed purposes are "at issue"

here.

> In evaluating whether an identified purpose is "at issue," courts should consider
> the material issues and facts the government must prove to obtain a conviction.
> We stress that a proponent's incantation of the proper uses of prior act
> evidence does not magically transform inadmissible evidence into admissible

21

> evidence. Rather, the proponent must identify a specific purpose that is of
> consequence in determining the action.

*Caldwell*, 760 F.3d at 276 (internal citations, brackets, and quotation marks omitted).

In the present case, Defendant Wright is charged with possession with intent to

distribute heroin, cocaine, and cocaine base ("crack") in violation of 21 U.S.C. §§ 841(a)(1)

and 841(b)(1)(B). Thus, the Government must prove the knowing or intentional possession

of the controlled substances, as well as the defendant's intent to distribute the controlled

substances. However, with respect to the "absence of mistake", the record presently before

this Court does not demonstrate why absence of mistake would be at issue here where it is

neither an element of the offense nor is there any suggestion, at this time, that Defendant is

asserting the possession of any controlled substance was a mistake. Similarly, although

knowledge is a proper non-propensity purpose, the record at this time does not necessarily

suggest that Wright's knowledge of the nature of the controlled substances is specifically

disputed. As the Third Circuit has cautioned, "merely by denying guilt of an offense with a

knowledge-based *mens rea,* a defendant [does not] open[] the door to admissibility of prior

convictions of the same crime", explaining that "[s]uch a holding would eviscerate Rule

404(b)'s protection and completely swallow the general rule against admission of prior bad

acts." *Caldwell*, 760 F.3d at 281; *see also, id*. ("Accordingly, we reject the suggestion that

'claiming innocence' is sufficient to place knowledge at issue for purposes of Rule 404(b).").

If, at trial, Defendant has not conceded or has otherwise opposed the Government's

evidence establishing his knowledge or intent, then these will be considered "at issue" and

subject to a timely renewal of the Government's motion to introduce evidence of the two prior convictions for drug related offenses.

Once the Government has identified a "non-propensity purpose that is at issue in the case", the second step requires that the Government "explain how the evidence is relevant to that purpose", which is a "crucial" step. *Caldwell*, 760 F.3d at 276. In proffering this evidence, the Government must "explain how it fits into a chain of inferences", connecting the evidence to a proper purpose and in which "no link . . . is a forbidden propensity inference." *Id*. at 277. Accordingly, "even when a non-propensity purpose is 'at issue' in a case, the evidence offered may be completely irrelevant to that purpose, or relevant only in an impermissible way". *Id.* at 281.

The Government explains that the convictions demonstrate "that Wright had personal knowledge to identify cocaine base (crack), how it is trafficked, and techniques for trafficking it" and that this "knowledge would include methods of packaging of bulk drugs for resale, which is clearly relevant in this case given the presence of large quantities of drugs and packaging materials." (Doc. 121, at 8). The Government further asserts that the convictions are relevant to prove intent where, "as here[,] there is not direct evidence of distribution activities by Wright." (*Id*.).

Although the Government argues that it is "well-established case law in the Third Circuit [] that evidence of the defendant's prior drug distributions are admissible to demonstrate knowledge and intent" (Doc. 121, at 9)(collecting cases), this alone is

insufficient to explain how Wright's knowledge of the controlled substances, or his intent to possess and distribute those substances are at issue and are demonstrated by his prior state court convictions.  Instead, "the Third Circuit requires a case-by-case, fact-specific approach to Rule 404(b) questions."  *United States v. Johnson*, 2018 WL 1367328, * 8 (M.D. Pa. 2018) (citing *Caldwell*, 760 F.3d at 277; Deena Greenberg, *Closing Pandora's Box: Limiting the Use of 404(b) to Introduce Prior Convictions in Drug Prosecutions*, 50 HARV. C.R.-C.L. REV. 519, 537 (2015)).

Again, where no evidence has yet been presented, this Court is not in a position to determine the relevance of the criminal convictions nor how this evidence may be relevant to its purported purpose, i.e. knowledge, intent, and/or absence of mistake.  Here, for example, prior convictions for possession with intent to distribute a controlled dangerous substance within 1,000 feet of a school property do not, at this time, necessarily lead to an inference that Wright had personal knowledge as to how cocaine is "trafficked" or "techniques for trafficking it."  The Government's further argument that this evidence is "more relevant" to proving intent because the Government does not have direct evidence of distribution activities by Wright is not persuasive.  The Government's lack of other evidence does not broaden its entitlement to use Rule 404(b) evidence or increase that evidence's presumption of admissibility.  Finally, where the convictions were in 2003 and 2006, approximately 12 years and 9 years prior to the instant alleged offense, the probative value, and relevance, of the prior convictions as direct or circumstantial evidence is diminished.

*See Caldwell*, 760 F.3d 283 ("The record suggests that once the District Court concluded

that knowledge was at issue, it was content to allow any evidence offered for that purpose.

Yet had the Court been more exacting in requiring the prosecution to articulate how

[Defendant's] 2005 and 2006 firearms convictions tended to prove his knowledge that he

was holding this gun some seven years later, it would have been clear that the evidentiary

chain cannot survive close scrutiny.").

This Court is further unpersuaded where the Government asserts that the *prejudice*

is diminished where it "is seeking only to introduce evidence of convictions related to

narcotics trafficking" and is "not seeking to introduce facts surrounding the convictions, but

only the name of the conviction, the date of the conviction, and the location of the

conviction." (Doc. 121, at 13).  This limitation on the evidence the Government seeks to

introduce does not aid its assertion of *relevance*.  As noted by another Court within the

Middle District of Pennsylvania where the Government similarly stated that it was not

attempting to introduce the underlying facts of the defendant's previous convictions:

> But if the prior convictions were truly intended to serve a non-propensity
> purpose, the underlying facts of [Defendant's] convictions would be relevant to
> establishing his unique knowledge, absence of mistake, or intent in the current
> prosecution. The government's attempt to point to prior convictions devoid of
> their details indicates that the true purpose of the [Rule] 404(b) evidence is
> simply to suggest that Lackey has a propensity for committing the instant
> offenses.

*United States v. Lackey*, 2019 WL 6468575, *3 n.2 (M.D.Pa. 2019).[6] Thus, here, where the Government seeks only to introduce the fact of two convictions for possession with intent to distribute a controlled dangerous substance within 1,000 feet of a school property in Passaic County Superior Court, in Paterson, New Jersey, from 2003 and 2006, the relevance of this information, without further factual support, cannot be determined.[7]

As a result, the Government at this time has failed to "concretely connect[] the proffered evidence to a non-propensity purpose", *Repak*, 852 F.3d at 243. Rather, the Government's explanation as to how the two prior state convictions in New Jersey are relevant to the non-propensity purposes, and how this evidence fits into a chain of inferences in which "no link . . . is a forbidden propensity inference", *Caldwell*, 760 F.3d at 277, fails to adequately set forth how this evidence has a tendency to make Wright's knowledge and intent more probable in the mind of a juror, *Repak*, 852 F.3d at 244, and does not simply

---

[6] Although noted in the context of a Rule 609 analysis, the Third Circuit's caution as to admitting limited evidence of a prior conviction, is of some utility here:

> Some have suggested that the unfair prejudice of an identical prior conviction can be reduced by permitting the introduction of only the fact and date of conviction, but not the nature of the crime. . . . Circumstances may exist where redacting the facts underlying the prior conviction in this manner is a viable way to reduce the prejudicial effect of the evidence. However, this approach may create other obstacles to admission. There are many types of felonies, and not all felony convictions strongly support the inference that the defendant is untrustworthy. Thus, the probative value of a prior felony conviction will be diminished where the jury is not provided information about the prior conviction that would help in evaluating the extent to which the offense reflects on the defendant's veracity as a trial witness.

*Caldwell*, 760 F.3d at 287 n.14 (internal citation omitted).

[7] The Government states that the 2003 conviction resulted from Wright's possession with intent to distribute 53 baggies of cocaine base. (Doc. 121, at 8). The Court, having not yet seen the evidence of convictions that the Government is attempting to introduce, is unaware of whether the "name of the conviction" would indicate what controlled substance was involved, or the quantity of that substance, facts which may affect the relevance of this evidence.

26

impermissibly suggest propensity.  The Government has thus not met its burden to establish the second step which it must meet as the proponent of the prior convictions.

Where the Government has failed to meet its burden at steps one and two of the Rule 404(b) analysis, the Court need not address the final two steps of this analysis.  *Caldwell*, 760 F.3d at 283.  Should the Government renew its motion to introduce evidence of the prior two convictions at trial, and meet its burden as to the first two steps, the Court will thereafter perform the requisite Rule 403 analysis at step three to determine whether the evidence is sufficiently probative, such that its probative value is not outweighed by the inherently prejudicial nature of prior bad act evidence, *Caldwell*, 760 F.3d at 277, and, if the Court deems the past convictions to be admissible, provide the appropriate limiting instruction.

In addition to seeking admission of the past convictions under Rule 404(b), the Government also argues that pursuant to Federal Rule of Evidence 609, evidence of Wright's prior convictions is admissible to impeach Wright should he take the stand.  (Doc. 121, at 14-18).

Pursuant to Rule 609,

> **(a) In General.** The following rules apply to attacking a witness's character for truthfulness by evidence of a criminal conviction:
> **(1)** for a crime that, in the convicting jurisdiction, was punishable by death or by imprisonment for more than one year, the evidence:
> . . .
> > **(B)** must be admitted in a criminal case in which the witness is a defendant, if the probative value of the evidence outweighs its prejudicial effect to that defendant; and
> **(2)** for any crime regardless of the punishment, the evidence must be admitted if the court can readily determine that establishing the elements

> of the crime required proving--or the witness's admitting--a dishonest act
> or false statement.

Fed. R. Evid. 609(a).  However, if more than ten years have passed since the witness's

conviction or release from confinement, then the conviction is only admissible if, "its

probative value, supported by specific facts and circumstances, substantially outweighs its

prejudicial effect" and the proponent of the evidence "gives an adverse party reasonable

written notice of the intent to use it so that the party has a fair opportunity to contest its use."

Fed. R. Evid. 609(b).[8]

In determining whether a prior conviction is admissible under Rule 609, important

factors should a District Court should consider are: "(1) the kind of crime involved; (2) when

the conviction occurred; (3) the importance of the witness' testimony to the case; (4) the

importance of the credibility of the defendant."  *Gov't of V.I. v. Bedford*, 671 F.2d 758, 761

n.4 (3d Cir. 1982).

Although unusual, "it is conceivable that evidence could be excluded under Rule

404(b), yet admissible for impeachment purposes under Rule 609."  *Caldwell*, 760 F.3d at

285.  This is so because:

> "[T]he respective rules operate in two completely different situations. In a
> criminal setting, evidence offered under Rule 404(b) is substantive evidence
> against the accused, i.e., it is part of the government's case offered to prove
> his guilt beyond a reasonable doubt. Rule 609 evidence on the other hand has
> to do with the accused's ability to tell the truth when testifying on his or her own

---

[8] *See also, United States v. Shannon*, 766 F.3d 346, 352 n. 9 (3d Cir. 2014) (observing that "[t]he Advisory Committee Notes for Rule 609(b) emphasize that 'convictions over 10 years old will be admitted *very rarely* and *only in exceptional circumstances*.' Fed.R.Evid. 609(b) advisory committee's note (emphasis added).").

behalf. While both rules speak of 'probative value' and 'prejudice,' it is critical to note that evidence offered under the respective rules is probative as to different matters. The probative character of evidence under Rule 609 has to do with credibility of a witness, while 404(b) 'probativeness' essentially goes to the question of whether or not the accused committed the crime charged. Any similarity or overlap in the standards of admissibility under the respective rules is irrelevant because the rules apply to completely distinct situations.

*Id.* at n.13 (quoting *United States v. Valencia,* 61 F.3d 616, 619 (8th Cir.1995)).

Here, the Government's motion with respect to Rule 609 is premature where it is unknown whether Defendant Wright will testify at trial.  Should the defendant choose to testify in his own defense, the Government's request to admit the prior convictions as impeachment evidence will be subject to timely renewal by the Government.

## III. CONCLUSION

For the foregoing reasons, the Government's "Motion in Limine Regarding Introduction of Judicial Statements" (Doc. 106) will be granted as set forth herein and the Government's Federal Rule of Evidence 404(b) Notice and Motion in Limine to Admit Criminal Histories Pursuant to Federal Rule of Evidence 609 (Doc. 120) will be denied without prejudice.  A separate Order follows.

Robert D. Mariani
United States District Judge