THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL NO. 3:16-CR-255 |
| v. | : | (JUDGE MARIANI) |
| | : | |
| CHAY WRIGHT, | : | |
| | : | |
| Defendant | : | |

## MEMORANDUM OPINION
### I. INTRODUCTION

Here the Court considers Defendant's Motion to Suppress Search of Cell Phone

Pursuant to Fed. R. Crim P. 12(c)(3).  (Doc. 124.)  Defendant acknowledges that his motion

is not timely filed but requests that the Court exclude the contents of the cell phone and any

fruits thereof at Defendant's upcoming trial pursuant to Federal Rule of Criminal Procedure

12(c)(3) which allows the Court to consider an untimely motion if the party filing the motion

shows good cause.  Defendant maintains that the identified evidence should be suppressed

because the thirteen-month delay in obtaining the search warrant for the seized phone was

unreasonable under the Fourth Amendment.  (Doc. 125 at 4.)  For the reasons discussed

below, the Court will deny Defendant's motion.

## II. FACTUAL AND PROCEDURAL BACKGROUND[1]

On October 6, 2015, at 10:15 a.m. Wilkes-Barre Police Department police officer Jeffrey Ference arrived at Xtreme Auto Works garage in Wilkes-Barre.  Ference was waiting for the business to open in order to conduct interviews of either an employee or the business owner regarding a complaint about business practices involving rental vehicles. A green Chevrolet pickup truck entered the business parking lot from the street and proceeded to back up and park between two vehicles next to the building. Thinking that the individual driving the pickup truck was associated with Xtreme Auto Works, Ference approached the vehicle and asked the driver if he was an employee or the owner of Extreme Auto Works. The driver (later identified as Chay Wright) was the sole occupant of the pickup and answered "no."  Ference then asked Wright if he knew when someone might be arriving to open the store.  Wright answered that he did not know and that he was waiting for someone.  At this point Ference assessed that Wright was exhibiting suspicious behavior and identified himself as a Wilkes-Barre Police (he was not in uniform, though he had a badge fastened to his belt which was clearly visible). He noted that, during this time, Wright had a cell phone in his lap that was ringing constantly.

---

[1] Unless otherwise cited, the background information is derived from the parties briefs. (Doc. 125 at 1-3; Doc. 133 at 1-6.)

Following further inquiry, Ference asked Wright to get out of his vehicle and conducted a pat down search of his person.  Ference advised Wright that he was part of an official investigation and requested Wright's name and date of birth. Wright provided this information, which was forwarded to the Luzerne County 911 Center for verification and warrants checks.  While Ference was awaiting response from the 911 Center, a zip lock bag containing marijuana was partially exposed when Wright pulled his hands out of the pocket of his hooded sweatshirt.  Wright was immediately placed under arrest, and a more thorough search of his person was conducted by authorities.  In addition to the drugs found on his person, two additional cellular telephones were found in Wright's pants pocket. Wright was thereafter placed in a police vehicle and transported to the Wilkes-Barre Police Department for processing.  In addition to the narcotics and cash on his person, police seized three cell phones from Wright at the time of his arrest. The cell phones are identified by their manufacturer as: (1) a Kyocera; (2) a Huawei; and, (3) a LG.

Following Wright's arrest, Ference filed charges in the Luzerne County Court of Common Pleas.  Wright was released on bond on the state charges on October 13, 2015.  On September 6, 2016, a federal grand jury in the Middle District of Pennsylvania indicted Mr. Wright for this same conduct.  (Doc. 1.)   The one-count indictment charges Wright with a violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B), alleging that he

knowingly, intentionally and unlawfully possessed with intent to distribute heroin, bk-MDEA (ethylone), cocaine, and in excess of 28 grams of cocaine base (crack).[2]  (Doc. 1 at 1.)  The Indictment also contains a Forfeiture Allegation identifying that the property to be forfeited includes approximately $7,376.00 in United States currency.[3]  (*Id.* at 2.)

On September 20, 2016, Wright pled not guilty to the federal indictment.  On September 23, 2016, he was released on personal recognizance.

On November 8, 2016, ATF Agent Ryan Kovach applied for and obtained a search warrant to search the contents of the three cell phones taken from Wright on the date of his arrest, October 6, 2015.  (Doc. 125-4.)  At the time, the phones were in storage at the Wilkes-Barre police department.  (*Id.*)

On November 18, 2016, ATF Digital Media Collection Specialist Ryan Anderson began the execution of the search warrant and forensic examination of the cell phones.  (Doc. 125-5 ¶ 3.)  On January 18, 2017, Anderson completed his forensic examination of the cell phones.  (Doc. 125-5 at 1.)  His report states that "copies of the extraction

---

[2] The Government's Motion to Amend Indictment (Doc. 114) was filed on February 17, 2021.  With the motion, the Government requested that the Court amend Count 1 of the Indictment to eliminate any reference to "bk-MDEA (ethylone), a derivative of 2-aminopropan –1 –one, a Schedule I controlled substance." (*Id*. at 6.)  The Court granted the motion by Order of February 18, 2021, and ordered the quoted language stricken from Count 1 of the Indictment.  (Doc. 116.)

[3] The amount identified in the Indictment as subject to forfeiture is affected by the Court's Order of January 21, 2021, which suppressed the contents of a locked box found in Defendant's residence.  (Doc. 103 ¶ 2(a).)  According to the Application for a Search Warrant, the box contained approximately $6,400.00 in United States currency.  (Doc. 125-4 at 6.)

reports were created onto (1) SanDisk 64GB USB flash drive and given to the case agent for review." (*Id.* ¶ 10.)

On August 11, 2017, Wright entered into a plea Plea Agreement.  (Doc. 21.)  On August 31, 2017, he entered a guilty plea as to Count 1 of the indictment.  (Doc. 27.) Wright was sentenced to a term of 144 months of imprisonment on August 16, 2018, and was remanded to the custody of the United States Marshal.  (Doc. 44.)

Wright filed a notice of appeal on August 23, 2018.  (Doc. 48.)  On November 27, 2019, Wright's conviction and sentence were vacated by the Court of Appeals for the Third Circuit and the case was remanded.  (Doc. 55.)  The Mandate issued on December 19, 2019.  (Doc. 56.)

On January 2, 2020, Brandon Reish, Esquire, of the Federal Public Defender's office was appointed to represent Wright.  (Doc. 57.)

The Court permitted Wright to pursue pretrial motions and, after being granted extensions of time to do so (Docs. 61, 62, 68-75), Wright filed several pretrial motions on August 24, 2020: Motion to Suppress Seizure of Defendant (Doc. 76); Motion to Suppress Search of Residence (Doc. 78); Motion for Use of Proposed Venire Video (Doc. 80); and Motion to Dismiss the Indictment for Vagueness (Doc. 82).  The Court denied all but the Motion to Suppress Search of Residence which was granted in part

and denied in part: the motion was denied except insofar as the contents of the locked metal box found in Wright's bedroom were suppressed.  (Docs. 103, 105.)

Government's Motion in Limine Regarding Introduction of Judicial Statements (Doc. 106) was filed on January 28, 2021.  On February 18, 2021, the trial in this matter was rescheduled to April 19, 2021.  (Doc. 115.)  On March 5, 2021, the Government filed its Notice of Intent to Introduce Evidence of Other Crimes, Wrongs, or Acts Pursuant to Federal Rule of Evidence 404(b).  (Doc. 120.)  By Order of April 14, 2021, the Court granted the Government's Motion in Limine Regarding Introduction of Judicial Statements (Doc. 106) and denied the Government's Notice of Intent to Introduce Evidence of Other Crimes, Wrongs, or Acts Pursuant to Federal Rule of Evidence 404(b) (Doc. 120) without prejudice.  (Doc. 147.)

Wright filed the Motion to Suppress Search of Cell Phone Pursuant to Fed. R. Crim. P. 12(c)(3), along with his supporting brief, on April 1, 2021.  (Docs. 124, 125.) The Court established an abbreviated briefing schedule by Order of April 5, 2021, requiring the Government to file a responsive brief on or before April 9, 2021, and allowing Wright to file a reply brief no later than 10:00 a.m. on April 13, 2021.  (Doc. 126 at 1.)  The Court also held the decision to hold an evidentiary hearing in abeyance pending receipt of the Government's brief.  (*Id*.)  The Government timely filed its brief

and the Court scheduled an evidentiary hearing for April 13, 2021, at 2:00 p.m.  (Docs. 133, 136.)  Wright did not file a reply brief and the time for doing so has passed.

At the April 13, 2021, evidentiary hearing, ATF Agent Ryan Kovach testified as did Jeffrey Ference, the Wilkes-Barre City Police Department officer who arrested Defendant and participated in the state investigation.  These witnesses were called by the Government.  Defendant did not call any witnesses.  Counsel for both parties presented oral argument following witness testimony.

Ference testified that charges were filed in state court following Wright's October 6, 2015, arrest based on evidence seized at the time of the arrest and information gained from an investigation in Hanover Township, Pennsylvania.  (Doc. 150, Hr'g Tr. 16:18-17:2.)  He explained that search warrants were never sought at the state level for the cell phones seized in the arrest.  (*Id.* 17:5-8; 19:1-4.)  Ference explained that they would not seek a warrant to search the phones until deemed necessary and that had not happened in this case.  (*Id.* 19:19-24.)  He further explained that a decision to seek a warrant to search a cell phone in a state investigation depended on the circumstances of the investigation and they had not determined that was necessary here.  (*Id.* 20:12-25.)  Ference also confirmed that he seized the cell phones from Wright because, in his mind, they were evidence of drug trafficking.  (*Id.* 21:7-10.)

On cross examination, Ference reiterated that it was not the normal practice in drug investigations in his jurisdiction to seek a search warrant to download a cell phone seized incident to an arrest and there was no standard time frame as to when a decision would be made to seek such a warrant. (Doc. 150, Hr'g Tr. 22:2-23:4.) Ference confirmed the role of cell phones in narcotics transactions and explained that, before the arrest, he had observed a cell phone ringing in Wright's lap and found two others on Wright's person. (*Id.* 25:2-26:12.) Ference stated that the three phones were taken in the search incident to arrest. (*Id.* 27:7-8.) He also testified that, to his knowledge, no one ever sought the return of the cell phones. (*Id.* 17:9-13.)

Regarding the involvement of federal officers, Ference testified that he was contacted by an ATF agent about the case proceeding on the federal level and estimated that the contact occurred a few months after the initial arrest. (*Id.* 18:9-21.) He said that state charges had been filed at the time and the case remained an active state investigation through the time of the federal indictment. (*Id.* 18:22-25, 26:19-25.)

Kovach testified that he recalled having contact with Mark Stefanowicz, another officer involved in the state case, early in the state investigation to see if it would be a case which would be charged federally. (*Id.* 6:13-16.) Kovach explained that, at some point, he indicated to local investigators that the ATF was interested in pursuing the case, something he termed an "adoptive investigation." (*Id.* 5:8-13, 6:22-24.) He further

testified that the ATF did in fact decide to adopt the case, after which the ATF received the reports from the arresting police departments, did a short investigation, and, together with the Assistant United States Attorney assigned to the case, determined what additional evidence needed to be gathered. (*Id.* 7:11-20.) Kovach said one of the first things the U.S. Attorney's office asked post-indictment was that the ATF get a search warrant on the cell phones that were taken when Wright was arrested. (*Id.* 7:23-8:1.) Kovach verified that he proceeded as directed and got the search warrant on November 8, 2016. (*Id.* 8:2-9.)

On cross-examination, Kovach explained that the ATF's initial investigation would take place before the federal indictment and would involve getting the police reports which would tell him what evidence had been recovered. (*Id.* 11:1-6.) He also confirmed that it would take the AUSA assigned to the case some time to review the case before deciding whether to pursue an indictment. (*Id.* 11:12-15.)

Regarding his knowledge of the seized cell phones, Kovach verified that he would have become aware of them through the police report and he did not tell investigators on the state side that it would be important for them to get a warrant to search the phones. (*Id.* 13:5-12.) Kovach said he did not know what the state investigators' procedures were as to obtaining warrants to search cell phones, and he reiterated that he never suggested that they get a warrant to search Wright's phones which were in the custody of the Wilkes-Barre Police Department from the arrest until they came into the possession of the ATF in November 2016. (*Id.* 13:15-16, 14:19-15:9.)

9

III. ANALYSIS

The motion under consideration here seeks suppression of the search of Wright's cell phones and the fruits of the search based on his contention that the thirteen months which elapsed from the time of his arrest in October 2015 until the search warrant was obtained in November 2016 was an unreasonable delay which violated his Fourth Amendment rights.  (Doc. 124 ¶ 13.)  The Government maintains that Defendant's motion should be denied because the delay in this case was reasonable and, alternatively, the suppression is not warranted under the good faith exception to the exclusionary rule.  (Doc. 133 at 7-13.)

As an initial matter, the Court must determine whether to consider the merits of this motion which was filed after the deadline for pretrial motions.  Defendant recognizes that the motion is not timely filed pursuant to Federal Rule of Criminal Procedure 12(c) but asserts that he has good cause for the late filing because the Government's first disclosure regarding cell phone information did not occur until March 23, 2021.  (*Id.* ¶¶ 6, 11, 12.)  The Government does not dispute Defendant's assertion that he has good cause for the late filing.  Because Defendant's counsel did not become aware of the cell phone search or warrant until a short time before he filed this motion, the Court finds that Defendant has shown the requisite good cause, Fed. R. Crim. P. 12(c)(3), and will consider the merits of Defendant's Fourth Amendment claim.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const., amend. IV. "The Fourth Amendment itself 'contains no requirements about *when* the search or seizure is to occur or the *duration*.'" *United States v. Syphers*, 426 F.3d 461, 469 (1st Cir. 2005) (quoting *United States v. Gerber*, 994 F.2d 1556, 1559–60 (11th Cir. 1993)).

"Reasonableness is ... the ultimate standard under the Fourth Amendment." *Soldal v. Cook Cnty.,* 506 U.S. 56, 71 (1967) (internal quotation omitted). "[T]he reasonableness determination will reflect a careful balancing of governmental and private interests." *Id.* Generally, a seizure of personal property is unreasonable "unless it is accomplished pursuant to a judicial warrant issued upon probable cause and particularly describing the items to be seized." *United States v. Place,* 462 U.S. 696, 701 (1983). However, as noted in *Illinois v. McArthur,* 531 U.S. 326 (2001), "[w]hen faced with special law enforcement needs, diminished expectations of privacy, minimal intrusions, or the like, the Court has found that certain general, or individual, circumstances may render a warrantless search or seizure reasonable." Id. at 330. Those circumstances include a search or seizure "incident to arrest," an exception based on "the need to disarm the suspect in order to take him into custody, and . . . the need to preserve evidence for later use at trial." *Knowles v. Iowa,* 525 U.S. 113, 116 (1998) (citations omitted).

11

As explained by the Court of Appeals for the Third Circuit in *United States v. Stabile*, 633 F.3d 219 (3d Cir. 2011),

> "a seizure lawful at its inception can nevertheless violate the Fourth Amendment if its manner of execution unreasonably infringes possessory interests protected by the Fourth Amendment's prohibition on 'unreasonable seizures.' " [*United States v. Jacobsen,* 466 U.S. 109, 125 (1984)]. To determine whether the seizure became unreasonable, this Court "must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *United States v. Place,* 462 U.S. 696, 703, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983); *see United States v. Martin,* 157 F.3d 46, 54 (2d Cir.1998) ("even a seizure based on probable cause is unconstitutional if police act with unreasonable delay in securing a warrant").

633 F.3d at 235. *Stabile* thus recognizes the balancing between privacy-related concerns and law-enforcement related concerns. *See McArthur*, 531 U.S. at 331. In fulfilling the balancing obligation, *Stabile* first looked at the defendant's property interest at stake and then turned to the Government's rationale for the delay. 633 F.3d at 235-36.

Guidance set out in *United States v. Burgard*, 675 F.3d 1029 (7th Cir. 2012), is helpful:

> on the individual person's side of this balance, the critical question relates to any possessory interest in the seized object, not to privacy or liberty interests. . . . The longer the police take to seek a warrant, the greater the infringement on the person's possessory interest will be, for the obvious reason that a longer seizure is a greater infringement on possession than a shorter one. But unnecessary delays also undermine the criminal justice process in a more general way: they prevent the judiciary from promptly evaluating and correcting improper seizures. Thus the "brevity" of the seizure is "an important factor" for us to weigh. *Place,* 462 U.S. at 709, 103 S.Ct. 2637. In addition, it can be revealing to see whether the person from whom the item was taken ever asserted a possessory claim to it—perhaps by checking on the status of the seizure or looking for assurances that the item would be returned. If so, this

would be some evidence (helpful, though not essential) that the seizure in fact affected her possessory interests. *See, e.g., United States v. Stabile,* 633 F.3d 219, 235–36 (3d Cir.2011)[.] . . .

Turning to the state's side, a key factor in our analysis is the strength of the state's basis for the seizure. The state has a stronger interest in seizures made on the basis of probable cause than in those resting only on reasonable suspicion. All else being equal, the Fourth Amendment will tolerate greater delays after probable-cause seizures. Compare *McArthur,* 531 U.S. at 331[.] . . .

Finally, when we balance these competing interests we must "take into account whether the police diligently pursue[d] their investigation." *Place,* 462 U.S. at 709, 103 S.Ct. 2637. When police act with diligence, courts can have greater confidence that the police interest is legitimate and that the intrusion is no greater than reasonably necessary. *McArthur,* 531 U.S. at 331, 121 S.Ct. 946 (upholding two-hour delay because it was "no longer than reasonably necessary for the police, acting with diligence, to obtain the warrant"). When police neglect to seek a warrant without any good explanation for that delay, it appears that the state is indifferent to searching the item and the intrusion on an individual's possessory interest is less likely to be justifiable.

*Burgard*, 675 F.3d at 1033.

Generally, "the burden is on the defendant who seeks to suppress evidence." *United States v. Johnson*, 63 F.3d 242, 245, (3d Cir. 1995). "However, once the defendant has established a basis for his motion, *i.e.*, the search or seizure was conducted without a warrant, the burden shifts to the government to show that the search or seizure was reasonable." *Id.*

Here, Defendant has established a basis for his motion, *i.e.*, that the thirteen-month time period from arrest to search warrant application was unreasonable. Therefore, it is the Government's burden to show that the delay was reasonable.

At the evidentiary hearing, Assistant United States Attorney Todd Hinkley initially stated that the delay was at most negligence but then said it was "even less than that." (Doc. 150, Hr'g Tr. 33:10-11.)  He argued that the delay was reasonable because the case originated in state court and the state investigators do not get a search warrant in every case where a cell phone has been seized.  (*Id.* 33:11-14.)  Hinkley pointed to Ference's testimony that there was some discussion that the case was going to go federal so Ference proceeded as he would in any other case.  (*Id.* 33:15-17.)  He also asserted that "[o]nce the Federal Government adopted the case, the search warrant was sought in a fairly short amount of time and the cell phones were searched."  (*Id.* 33:17-19.)

In reviewing Defendant's possessory interest in the phone, Hinkley points to the fact that the phones were seized as evidence in the case, neither Wright nor anyone on his behalf requested return of the phones, and he did not have a possessory interest for the short time he was incarcerated because he could not have used a phone during that time. (*Id.* 33:21-34:5.)

Defendant's counsel, Assistant Federal Public Defender Brandon Reish, argued that the delay was intentional rather than negligent:

> [i]t was the intent to delay this, because that's the practice of the officers who handled these cases in that jurisdiction.  And whether that's a State case or not, it's under the Federal umbrella, so the same test is applying, during that period . . . .  The whole period of time not just the couple months after the indictment, should all be attributed to the Government for this case.
>
> And Officer Ference's conduct was consistent with [state] practice . . . . I'm arguing the practice isn't proper.

14

(*Id.* 35:12-20.)  Reish did not address Wright's specific possessory interest in the phones either at the hearing or in his brief.

Here, considering the relevant legal framework, the Court concludes that the government (state government at the time of seizure) had a strong interest in the seizure given that it was based on probable cause—the phones were found incident to Defendant's arrest which took place after a bag of marijuana fell out his pocket.  The state also had a strong interest in the seizure because multiple cell phones were found on Defendant's person and the existence of multiple cell phones was evidence of drug-trafficking.  A relationship between use of multiple cell phones and drug trafficking is well recognized. *See United States v. Tutis*, ---F. App'x---, 2021 WL 515318, at *1 (3d Cir. Feb. 11, 2021); *see also United States v. Robinson*, 529 F. App'x 134, 138 (3d Cir. 2013).

Turning now to the rationale for the delay, Defendant's Fourth Amendment claim is based on the duration of time between seizure and warrant.  Aside from his warrant-related allegations, Defendant does not claim that property seized for use in investigation and trial was otherwise improperly retained, i.e., he does not identify a Fourth Amendment violation based on the Wilkes-Barre Police Department's retention of the phones for their evidentiary value based simply on the fact that Defendant had three phones in his possession when he was arrested.

Although Defendant does not address the cell phones' evidentiary value independent of their contents, the Court's inquiry into the reasonableness of the delay between seizure

and warrant for Fourth Amendment purposes necessarily takes into account the validity of the reason no warrant was secured for the period when the phones were in state custody and only state charges were pending.  Defendant seeks to paint with a broad brush with his suggestion that the state case was "under Federal umbrella." (Doc. 150, Hr'g Tr. 35:15.) This assessment is not factually or legally accurate.  As set out above, hearing testimony showed that, although Kovach spoke with a state investigator, the state team operated on its own and followed its own procedures regarding the handling of the cell phones.  Kovach did not talk to state investigators about a search warrant for the phones or otherwise direct their investigation.  When Defendant was federally indicted, state charges remained pending and the phones remained in the custody and control of the Wilkes-Barre Police Department.  Thus, the Court will independently assess the reasons for the delay expressed by both state and federal investigators.

Because Defendant does not dispute that the phones were lawfully seized incident to an arrest based on probable cause, *Burgard's* concern that unnecessary delays undermine the criminal justice process by preventing the judiciary from promptly evaluating and correcting improper seizures, 675 F.3d at 1033, is not relevant here.  During the post-arrest period, the state investigators retained the seized phones as evidence of drug trafficking. Ference's testimony indicates that he seized the cell phones from Wright because, in his mind, they were evidence of drug trafficking.  (Doc. 150, Hr'g Tr. 21:7-10.)  As previously established, the relationship between the use of multiple cell phones and drug trafficking

is well recognized generally. *See supra* p. 16.  The relationship was specifically recognized in this case in the Application for a Search Warrant when ATF Agent Kovach stated that "traffickers often use multiple cell phones" and, in conjunction with the drugs seized, he believed Wright possessed the phones as "tools of the trade."  (Doc. 125-4 at 7.)

Given the connection between possession of multiple cell phones and drug trafficking, state investigators reasonably believed that the phones themselves were evidence of drug trafficking and the phones' evidentiary value did not hinge on the contents of the phone.  On this basis, delay attributable to the time period when state investigators retained the phones because of their evidentiary value independent of the contents of the phones would be reasonable unless undermined by countervailing evidence.  This presumption of reasonableness is bolstered by Ference's testimony that those involved with the state investigation had not decided whether a warrant would be sought to search the phones and it was not their practice to routinely get a search warrant for phones seized in drug arrests until specific need was determined.  While *Riley v. California*, 573 U.S. 373, 386 (2014), requires that police generally get a search warrant prior to searching a cell phone seized from an individual who has been arrested, it does not require that a warrant be sought in every case where a cell phone is seized.  As seized personal property of evidentiary value regardless of the contents of the phones, the ongoing state criminal investigation and proceedings support the Wilkes-Barre Police Department's

entitlement to retain possession of the seized phones based on the need to preserve

evidence for trial. *See*, *e.g.*, *Sovereign News Co. v. United States*, 690 F.2d 569, 577 (6th

Cir. 1982) (citations omitted).

The record shows that, after the September 6, 2015, Indictment, the federal

prosecutor assigned to this case asked the ATF agent to get a search warrant for the cell

phones which remained in state custody.[4]  (Doc. 150, Hr'g Tr. 7:23-8:6.)  On November 8,

2016, Kovach completed the Application for a Search Warrant. (Doc. 125-4.)  Thus, at most

there was a delay of approximately two months from the time of the Indictment until a

search warrant was sought for the phones.  Defendant makes no argument that a two-

month delay is unreasonable, nor does the Court find a basis to find this delay

unreasonable.  In cases where delays in getting a search warrant of short duration (less

than a month) have been found unreasonable, ascertaining the contents of the property at

issue was necessary to determine whether there was a basis for a criminal charge and, had

the search been fruitless, there would have been no charges.  *See United States v. Berroa*,

Crim. No. 19-CR-10164, 2021 WL 149254, at *4 (D. Mass. Jan. 15, 2021) (listing cases).

Here, as evidenced by the state charges and federal Indictment which preceded the search

warrant, knowledge of the contents of the cell phones was not necessary to bring charges.

---

[4] Kovach's testimony indicates that he knew of the existence of the phones before a decision was made by the U.S. Attorney's office to seek a federal indictment.  (Doc. 150, Hr'g Tr. 10:16-11:.)  However, he said that the decision to indict was made by the United States Attorney's office and it takes some time to review whether the case will be adopted.  (*Id.* 11:7-16.)

Numerous cases, including *Stabile*, 633 F.3d at 236, have found delays of two to three months reasonable.  *See United States v. Carey*, Crim. No. 3:CR-18-037, 2020 WL 59607, at *3 (M.D. Pa. Jan. 6, 2020) (listing cases).

Looking at the total thirteen-month period, courts have found delays of a year or more reasonable.  *See United States v. Mulder*, 889 F.2d 239, 241 (9th Cir. 1989) (finding one-year delay reasonable, where the defendant's seized property (pills) was not obtained "as the result of an unlawful search," the defendant "never made a motion for the return of the [property]," and "the time lapse was the result of the judicial appeal process rather than any dilatory tactics");  *United States v. Howe*, 545 F. App'x 64, 66 (2d Cir. 2013) (finding thirteen-month delay reasonable where the government had strong interest in evidentiary value of the property (laptop), the seizure of the property did not restrain the defendant's liberty interests, and the delay in seeking the warrant was due to error rather than a lack of diligence).

As in *Mulder*, here the property was not obtained through an unlawful search, Defendant did not move for the return of the property, there is no evidence of dilatory tactics, and the time lapse was the result of normal investigative and judicial processes.  As in *Howe*, the government had a strong interest in the evidentiary value of the seized property and the seizure of the phones did not restrain Defendant's liberty interests. Although the delay in this case was not due to an error in applying for the warrant as was the case in *Howe*, 545 F. App'x at 66,  the application for the warrant approximately two

months after the indictment does not show a lack of diligence given the phones'
independent evidentiary value.

While Defendant does not articulate the specific property interest at stake in the cell
phones (Doc. 125; Doc. 150, Hr'g Tr. 34:21-36:10), the Court assumes that he had some
property interest in the three cell phones seized. However, the Court finds that Wright's
property interest is diminished by the fact that he *never* sought return of the phones and,
arguably, his ongoing failure to seek return of his phones over the thirteen-month period at
issue increasingly diminished his property interest in the phones. While incarcerated from
October 6, 2015, to October 13, 2015, and September 19, 2016, to September 23, 2016,
Wright's property interest in the phones was also diminished because he could not have
possessed the phones.  *See United States v. Schaffer*, Crim. No. 13-183, 2017 WL 729787,
at *3 (D.N.J. Feb. 24, 2017) (citing *Segura v. United States*, 468 U.S. 796, 812 (1984)).
Once indicted on federal charges, Defendant could have filed a motion for the return of his
property pursuant to Federal Rule of Criminal Procedure 41(g), yet he failed to do so.
Having never sought return of the phones, Defendant raises the Fourth Amendment claim
related to unreasonable delay in securing a warrant to search the phones for the first time
over five years after the phones were seized.

As recognized in *Stabile*, "defendants who 'never sought return of the property'
cannot argue that delay adversely affected Fourth Amendment rights." 633 F.3d at 236
(quoting *United States v. Johns*, 469 U.S. 487 (1985)). Further, as discussed above, the

20

propriety of the retention of the seized phones for their evidentiary value in this drug case, irrespective of the content of the phones, further diminishes Defendant's property interest in the phones while the case is ongoing.  For this reason, the concern in *Burgard* that "the longer the police take to seek a warrant, the greater the infringement on the person's possessory interest will be," 675 F.3d at 1033, is inapplicable because the propriety of the retention of the seized property was not dependent on securing a search warrant.  Rather, based on the phones' independent evidentiary value, the duration of the retention would not have been shortened if a warrant had been obtained sooner.  For these reasons, the Court concludes that Defendant has a negligible possessory interest in the property seized.

On balance, given the strength of the government's initial and ongoing interest in the seizure, the rationale provided for the delay, and Defendant's negligible property interest in his phones, the delay from the time of the federal Indictment to the application for the search warrant was reasonable.  The thirteen-month period is a closer call than the two-month period following the Indictment.  However, based on the circumstances of this case—particularly Defendant's negligible property interest in the cell phones, the multijurisdictional aspects of the case, the fact that the federal case began eleven months after the state case, and the two-fold evidentiary value related to the phones, i.e., the phones themselves separate from the contents of the phones--the Court concludes that the delay did not violate Defendant's Fourth Amendment rights.

With this determination, the Court declines Defendant's request that the Court

consider an additional factor, prejudice to the defendant, in determining the reasonableness

of the delay in this case.  (Doc. 125 at 6, 8.)   The Court's reason for doing so is twofold.

First, the prejudice is unrelated to the thirteen-month period of delay at issue with

Defendant's claimed Fourth Amendment violation.  Second, the Court finds no alternative

grounds upon which to base a determination that the prejudice alleged would warrant

precluding phone-related evidence.

In his supporting brief, Defendant argues that prejudice is a factor to be considered

here on the following basis:

> when the disclosure of the search warrant and contents of the cell phones
> are being made within a month of the trial date, the prejudice here is much
> like *Berrao* when the court reasoned:
>
>> Defendant was, however, potentially prejudiced by not being
>> made aware of the full extent of the Government's evidence
>> against him until relatively late in the game and therefore
>> having to make important decisions regarding how to litigate
>> his case (e.g., if and when to plead) based on incomplete
>> information.
>
> *Berrao* at 16.  In *Berrao*, the government provided the cell phone contents
> seven months in advance of trial. Thus, the Court found any prejudice to be
> minimal. Here, the government provided the contents less than three weeks
> away from trial. The prejudice here is more than minimal.

(Doc. 125 at 8.)

If the Court were to assume *arguendo* that consideration of prejudice to a

defendant is an appropriate factor in the Fourth Amendment analysis of the search

22

warrant delay, the result in this case would not differ.  Defendant's reliance on *Berroa* is misplaced in that he did not suffer prejudice resulting from the delay of thirteen months from the seizure to the search warrant application.  *Berroa's* consideration of prejudice was directly related to the claimed Fourth Amendment delay--the search warrant was allegedly obtained close to trial and, therefore, if that were the case, the prejudice would have been directly related to the claimed Fourth Amendment violation. 2021 WL 149254, at *6.  Here, the delay claimed to violate the Fourth Amendment ended on November 8, 2016, when Kovach obtained a search warrant for the cell phones.  (*See* Doc. 125 at 4-8.)  The prejudice now claimed by Defendant relates to a different delay, i.e., the delay between completion of the forensic examination of the phones in January 2017, and the Government's March 23, 2021, notification to Defendant that the cell phones had been searched and the government possessed data from the search.  (Doc. 124 ¶ 6; Doc. 125 at 2.)  While the Court does not condone the Government's late disclosure, any possible prejudice would be distinct from that which could have been caused by the claimed Fourth Amendment related delay from October 6, 2015, to November 8, 2016.

At the evidentiary hearing, Defendant's counsel acknowledged that the timing of data production was not necessarily a factor in the Fourth Amendment analysis, but he asserted that it plays a role in this case because the data derived from the search is being provided very close to trial.  (Doc. 150, Hr'g Tr. 36:1-5.)  Following up on counsel's

prejudice argument, the Court asked if he was asserting prejudice based on the

production of the information to him, i.e., the March 23, 2021, notification, as well as the

receipt of the ATF agent's extraction report on April 6, 2021, and, if so, how he was

prejudiced. (*Id.* 36:13-24.)   Counsel affirmed that he was asserting prejudice based on

the late receipt of this information and described the prejudice as follows:

> The prejudice would be that if they are to use – there's a report, for example, I know they've said they've identified one person, of course, they'll give us information about who that person is, so maybe there the prejudice is less.
>
> I recognize that most of what this is looks – it's going to be alleged to be incriminating, too.  So I don't know that – I can't say that they withheld Brady material, certainly, . . . I can't say that's what we're dealing with.  I think any prejudice here is just – this is, again, inculpatory evidence.
>
> The one case talked about how inculpatory can prejudice the Defendant's decision as to how he wants to proceed with this case.  He may corner himself into a place where he's now trying a case, after filing of 851 notices and certain things, and Mr. Wright makes decisions, based on his knowledge, this bit of knowledge was in the Government's possession for five years.  I think there's one case that talks about that.
>
> And when you say, prejudice, it's more decisional prejudice, perhaps. That's the closest I can get with what I know.

(Doc. 150, Hr'g Tr. 36:25-37:20.)

Assuming *Berroa* to be the case upon which Defendant's counsel relies, such

reliance is misplaced for the reasons discussed above.  Because Defendant's argument

is based on the timing of the Government's disclosure of material subject to discovery

rather than the asserted Fourth Amendment delay, his claim of prejudice would be

24

properly raised pursuant to Federal Rule of Criminal Procedure 16 where prejudice to the

defendant is a factor considered in deciding whether sanctions for failure to comply with

a discovery rule are warranted.  *See*, *e.g.*, *United States v. Petersen,* Crim. No. 2019-60,

2019 WL 6255836, at *3 (D.V.I. Nov. 22, 2019).

Without deciding the merits of a Rule 16 motion, if the Court were to consider

prejudice to Defendant under that provision, the Court would find the prejudice minimal

at most. This is not a case where Defendant could be caught completely off-guard by the

late disclosed evidence.  Defendant knew that his cell phones were seized. Because

they were his phones, he was and is presumably familiar with the information they

contain.  Thus, since October 2015, Defendant has been aware of the potential that

information contained in the phones could be used against him and he could have taken

this into account when making litigation decisions.  As these considerations undermine

Defendant's assertion of "decisional prejudice," and this is the only "prejudice" identified

in connection with the late acquisition of the extraction report, the Court is without a

sufficient basis to prohibit the Government from using the material contained in the

report.

Based on the Court's determination that Defendant's Fourth Amendment rights

were not violated by the delay in obtaining a search warrant for the seized cell phones,

discussion of the Government's alternative argument that the material at issue should

not be suppressed based on the good faith exception to the exclusionary rule (Doc. 133 at 12) need not be discussed.

## IV. CONCLUSION

For the reasons set out above, Defendant's Motion to Suppress Search of Cell Phone Pursuant to Fed. R. Crim P. 12(c)(3) (Doc. 124) will be denied.  A separate Order will be filed simultaneously with this Memorandum Opinion.

Robert D. Mariani
United States District Judge